**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Bayong Brown Bayong and         :
Ahmed Adem

                                :       Case No. 1:20-cv-00989

         Plaintiffs,        :       Judge Jeffery P. Hopkins
                                          Magistrate Judge Stephanie K. Bowman

     v.                         :

County of Butler, Ohio, *et al.*       :

                                  :
        Defendants.

---

**DEFENDANTS' PROPOSED UNDISPUTED FACTS**

---

In accordance with this Court's August 23, 2024 Order, as well as Civil Standing Order

I.(F)(b), Defendants, Butler County, Ohio, the Butler County Board of Commissioners, the Butler

County Jail, and Corrections Officers "A. Roberts, L. Browning, and Blankton," propose the

following undisputed facts in connection with their previously filed Motion for Summary

Judgment:

1.      Plaintiff Bayong Brown Bayong was booked into the Butler County Jail on June 5, 2020. (Investigation, Doc. 36-7, PageID752-53, 755; *see also* Bayong, Doc. 31, PageID184-85).

2.      Plaintiff Ahmed Adem was booked into the Butler County Jail on July 21, 2020. (Adem Depo. I, Doc. 32, PageID333; Investigation, Doc. 36-7, PageID772, 822, 783).

3.      Mr. Bayong and Mr. Adem were both housed in the Butler County Jail as civil immigration detainees in 2020. (Investigation, Doc. 36-7, PageID751-53 ("hold for ICE"), 755, 764, 770, 772 ("hold for ICE"), 779).

4.      In 2020, the Butler County Jail had a contract with U.S. Immigration and Customs Enforcement ("ICE") through which the Butler County Jail housed civil immigration detainees for the federal government. (Investigation, Doc. 36-7, PageID859 ("Butler County Jail has had a contract with ICE to detainee *[sic]* immigrants for a number of years."); *see also* Complaint, Doc. 1, PageID3 at ¶9; Amended Complaint, Doc. 37, PageID927 at ¶8).

5.   Neither Mr. Bayong nor Mr. Adem is currently housed in the Butler County Jail. (Bayong, Doc. 31, PageID166, 170; Adem Depo. I, Doc. 32, PageID324-25, 327).

6.   Mr. Bayong was deported to Cameroon in May 2022. (Bayong, Doc. 31, PageID170).

7.   Mr. Adem was released from the Butler County Jail in 2020 and was transported directly to the Calhoun County Jail in Michigan. (Adem Depo. I, Doc. 32, PageID327-28).

8.   Immediately prior to his July 2020 booking into the Butler County Jail, Mr. Adem was a prisoner in Lebanon Correctional Institution (Ohio). (Adem Depo. I, Doc. 32, PageID330).

9.   Mr. Adem was transported directly from Lebanon Correctional Institution to the Butler County Jail in July 2020. (Adem Depo. I, Doc. 32, PageID330).

10.  Mr. Adem was held in Lebanon Correctional Institution to serve part of his sentence for aggravated robbery after he was transferred from the Chillicothe Correctional Center (Ohio). (Adem Depo. I, Doc. 32, PageID330; *see also* Investigation, Doc. 36-7, PageID784-85).

11.  In total between his stays in Lebanon Correctional Institution and the Chillicothe Correctional Center, Mr. Adem served four years and eleven months of his prison sentence for aggravated robbery. (Adem Depo. I, Doc. 32, PageID330-31; *see also* Investigation, Doc. 36-7, PageID773, 784-85; Adem Depo. II, Doc. 33, PageID420, 424).

12.  When Mr. Adem arrived at the Butler County Jail from Lebanon Correctional Institution, he demanded to be fed. (Adem Depo. I, Doc. 32, PageID333 ("Q. And you were demanding to be fed; is that right? A. Yes, ma'am"); July Force Review, Doc. 36-2, PageID690, 695; Investigation, Doc. 36-7, PageID799; Adem Corrected Declaration, Doc. 86-1, PageID2012).

13.  While waiting to be processed into the Butler County Jail on July 21, 2020, Mr. Adem was in a holding cell with four other detainees. (Adem Depo. I, Doc. 32, PageID333-34).

14.  The Butler County Jail's booking area is a high-traffic area, where detainees are nearly constantly moving in and out and multiple detainees are being temporarily held. (Caruso Report, Doc. 38-1, PageID985).

15.  On July 21, 2020, Mr. Adem, in front of four other detainees, "kept on" demanding that corrections staff provide Mr. Adem with food. (Adem Depo. I, Doc. 21, PageID 333-34 ("Q. And you were demanding to be fed; is that right? A. Yes, ma'am"), 335 ("I kept on asking them to feed us."); July Force Review, Doc. 36-2, PageID690 ("screaming at staff demanding to be fed and saying to the other inmates 'Yall see these mother fuckers? They need to feed us now!'"); Investigation, Doc. 36-7, PageID747, 799; Caruso Report, Doc. 38-1, PageID984).

16. In response to Mr. Adem's demands to be fed outside of the jail's scheduled meal passes, corrections officers advised Mr. Adem that he would need to wait. (July Force Review, Doc. 36-2, PageID690-91, 695; Investigation, Doc. 36-7, PageID799; *see also* Adem Depo. I, Doc. 32, PageID334-35; Caruso Report, Doc. 38-1, PageID984).

17. On July 21, 2020, Mr. Adem was upset when his demands to be fed outside the jail's scheduled meal passes were not answered to his satisfaction. (Investigation, Doc. 36-7, PageID747, 798-800, 811-12; *see also* July Force Review, Doc. 36-2, PageID690, 692, 697 ("Found this pt. standing at the cell door, agitated and yelling"); Adem Depo. I, Doc. 32, PageID333, 335).

18. On July 21, 2020, Mr. Adem cursed at corrections officers after his demands to be fed outside the jail's scheduled meal passes were not answered to his satisfaction. (Investigation, Doc. 36-7, PageID747-48, 798-800, 811-12; *see also* July Force Review, Doc. 36-2, PageID690, 692, 695, 697 ("Found this pt. standing at the cell door, agitated and yelling 'I'm gonna start killin people in this mother-f**ker!'")).

19. Sergeant Rumpler observed Mr. Adem screaming profanities at Corrections Officers Washburn and Phipps on July 21, 2020. (July Force Review, Doc. 36-2, PageID692, 698-99; Investigation, Doc. 36-7, PageID798).

20. In the afternoon of July 21, 2020, Mr. Adem was escorted to the shower area to continue the booking process. (July Force Review, Doc. 36-2, PageID690-92, 695, 698-99; Investigation, Doc. 36-7, PageID799, 811-12; *see also* Caruso Report, Doc. 38-1, PageID984).

21. In accordance with generally accepted correctional practices, moving a disruptive, aggressive, and/or noncompliant detainee to an isolated area is the best way to prevent the incitement of other inmates, and it assists in keeping order at and maintaining the normal operations of the correctional facility. (Caruso Report, Doc. 38-1, PageID985).

22. A disruptive, aggressive, and/or noncompliant detainee in a high-traffic area like the Butler County Jail's booking area presents exceptional danger to safety and security. (Caruso Report, Doc. 38-1, PageID985).

23. Corrections Officer Phipps, Corrections Officer Washburn, and Sergeant Rumpler, who are not parties to this lawsuit, were involved in escorting Mr. Adem to the shower area the afternoon of July 21, 2020. (Adem Depo. I, Doc. 32, PageID335-39, 341; July Force Review, Doc. 36-2, PageID689-95, 698-99; Investigation, Doc. 36-7, PageID799-800, 811-12; Adem Corrected Declaration, Doc. 86-1, PageID2012).

24. Defendant Corrections Officers Roberts, Browning, and "Blankton" were not involved in or present for Mr. Adem's escort into the shower area on July 21, 2020. (Adem Depo. I, Doc. 32, PageID335-39, 341; July Force Review, Doc. 36-2, PageID689-95, 698-99; Investigation, Doc. 36-7, PageID799-800; *see also* Roberts, Doc. 34-1, PageID445; Browning, Doc. 39-1, PageID992; Adem Corrected Declaration, Doc. 86-1, PageID2012).

25.    Only Corrections Officers Washburn and Phipps, who are not parties to this lawsuit, were involved in the July 21, 2020 use of force against Mr. Adem. (Adem Depo. I, Doc. 32, PageID335-39, 341; July Force Review, Doc. 36-2, PageID689-95, 698-99; Investigation, Doc. 36-7, PageID799-800; *see also* Caruso Report, Doc. 38-1, PageID984; Adem Corrected Declarations, Doc. 86-1, PageID2012).

26.    Defendant Corrections Officers Roberts, Browning, and "Blankton" were not involved in or present for any use of force against Mr. Adem on July 21, 2020. (Adem Depo. I, Doc. 32, PageID335-39, 341; July Force Review, Doc. 36-2, PageID689-95, 698-99; Investigation, Doc. 36-7, PageID799-800; *see also* Roberts, Doc. 34-1, PageID445; Browning, Doc. 39-1, PageID992; Adem Corrected Declaration, Doc. 86-1, PageID2012).

27.    At approximately 3:20p.m. on July 21, 2020, a medical professional at the Butler County Jail was summoned to evaluate Mr. Adem for potential injury after the July 21, 2020 use of force. (July Force Review, Doc. 36-2, PageID692, 697; *see also* id. at PageID690-91, 695, 698-99; Investigation, Doc. 36-7, PageID811-12).

28.    A medical professional responded to the jail's booking area at approximately 3:20p.m. on July 21, 2020 to evaluate Mr. Adem for potential injury after the July 21, 2020 use of force, but Mr. Adem refused a full evaluation. (July Force Review, Doc. 36-2, PageID697 ("Pt. refused to allow medical to eval further. Visit d/c. Forensic will speak with this pt. for further assessment after pt. demeanor improves."), 698-99; *see also* id. at PageID690-92, 695; Adem Depo. I, Doc. 32, PageID337).

29.    ICE was notified by the Butler County Sheriff's Office of the July 21, 2020 use of force involving Mr. Adem. (July Force Review, Doc. 36-2, PageID692, 698 (copy of emailed notice); Investigation, Doc. 36-7, PageID798).

30.    A Subject Management Report was completed for the July 21, 2020 use of force involving Mr. Adem. (July Force Review, Doc. 36-2; *see also* Fisher, Doc. 36-1, PageID686).

31.    A use of force review over the July 21, 2020 use of force involving Mr. Adem was conducted by the Butler County Sheriff's Office. (July Force Review, Doc. 36-2; *see also* Fisher, Doc. 36-1, PageID686).

32.    As part of the use of force review over the July 21, 2020 use of force involving Mr. Adem, a jail lieutenant, Lt. Clendenin, was advised of and reviewed the circumstances of the July 21, 2020 use of force involving Mr. Adem. (July Force Review, Doc. 36-2, PageID689, 692, 696, 698-99; Investigation, Doc. 36-7, PageID798, 800).

33.    Mr. Adem met with a mental health professional, called forensics, on July 23, 2020 and Mr. Adem did not raise with the mental health professional the July 21, 2020 use of force. (Adem Depo. I, Doc. 32, PageID345).

34.   On July 23, 2020, Mr. Adem denied needing to meet with a psychiatrist. (Adem Depo. I, Doc. 32, PageID345-46).

35.   On July 23, 2020, Mr. Adem denied any need for further mental health attention. (Adem Depo. I, Doc. 32, PageID345-46).

36.   The Butler County Jail's mental health professionals, called forensics, met with Mr. Adem "every like three days, four days to see if [he] was okay" during his 2020 detention at the Butler County Jail. (Adem Depo. I, Doc. 32, PageID346).

37.   The Butler County Sheriff's Office takes allegations of corrections officer misconduct at the Butler County Jail very seriously. (Fisher, Doc. 36-1, PageID688; *see also* Investigation, Doc. 36-7; Officer Statements, Doc. 36-8).

38.   The July 21, 2020 use of force involving Mr. Adem was again investigated by the Butler County Sheriff's Office during the civil rights investigation it conducted from November 2020 through January 2021. (Investigation, Doc. 36-7, PageID747-48, 798-801, 811-12, 834, 840, 847; *see also* July Force Review, Doc. 36-1; Fisher, Doc. 36-1, PageID686, 687).

39.   During the Butler County Sheriff's Office's civil rights investigation, Corrections Officer Phipps was interviewed about the July 21, 2020 use of force involving Mr. Adem, and Corrections Officer Phipps reviewed and signed a summary of that interview written by Sgt. Fuller. (Investigation, Doc. 36-7, PageID840; Officer Statements, Doc. 36-8, PageID899).

40.   During the Butler County Sheriff's Office's civil rights investigation, Corrections Officer Washburn was interviewed about the July 21, 2020 use of force involving Mr. Adem. (Investigation, Doc. 36-7, PageID847; Officer Statements, Doc. 36-8, PageID924).

41.   During the Butler County Sheriff's Office's civil rights investigation, Corrections Officer Washburn, who no longer worked at the Butler County Jail, was called back to the Sheriff's Office to submit to an interview about the July 21, 2020 use of force involving Mr. Adem. (Investigation, Doc. 36-7, PageID847; Officer Statements, Doc. 36-8, PageID924).

42.   Prior to his June 2020 booking into the Butler County Jail, Mr. Bayong had previously been incarcerated in the Butler County Jail, the Morrow County Jail, and the Franklin County Jail. (Bayong, Doc. 31, PageID183-84; *see also* Investigation, Doc. 36-7, PageID759).

43.   Mr. Bayong was transferred from the Morrow County Jail to the Butler County Jail on June 5, 2020. (Bayong, Doc. 31, PageID183-84 ("From Morrow, I went back to Butler."); Investigation, Doc. 36-7, PageID755, 831).

44.   Mr. Bayong was released from the Butler County Jail on December 9, 2020 and was transferred directly to the Franklin County Jail again. (Bayong, Doc. 31, PageID184-86).

45.     Mr. Bayong cannot remember receiving any specific medical treatment from a healthcare provider while he was in the custody of Franklin County after his December 9, 2020 transfer from the Butler County Jail. (Bayong, Doc. 31, PageID186-87; *see also* id. at PageID191 (cannot remember ever complaining of a physical or mental issue during any jail intake process)).

46.     The Butler County Jail implemented additional protocols, starting in March 2020, to address the COVID-19 pandemic, including, but not limited to, medical isolation or quarantine of symptomatic detainees and detainees suspected of having been in close contact with a COVID-19-positive individual. (Fisher, Doc. 36-1, PageID686).

47.     As part of the Butler County Jail's additional protocols to address the COVID-19 pandemic, inmates were required to wear a mask, covering their nose and mouth, whenever the inmate left their designated cell. (Investigation, Doc. 36-7, PageID793; *see also* id. at PageID746; Bayong, Doc. 31, PageID200-01; Adem Depo. I, Doc. 32, PageID347-48).

48.     On August 13, 2020, Mr. Bayong was not wearing his COVID-19 mask properly and, after several warnings by Corrections Officer Browning, was issued a disciplinary ticket for his related misconduct. (Investigation, Doc. 36-7, PageID746, 793-94, 831-32; Bayong, Doc. 31, PageID200-01 (admitting to wearing mask below his nose), 265 ("On August 13,…I had my mask below my nose") 266-68).

49.     No force was used against Mr. Bayong on August 13, 2020. (Bayong, Doc. 31, PageID265-68; Investigation, Doc. 36-7, PageID793; Browning, Doc. 39-1; Plfs' Opp. to MSJ, Doc. 56, PageID1253-54).

50.     Mr. Bayong's hearing over his August 13, 2020 disciplinary ticket was conducted on August 17, 2020. (Investigation, Doc. 36-7, PageID790, 794).

51.     During Mr. Bayong's August 17, 2020 hearing over his August 13, 2020 disciplinary ticket, Mr. Bayong was found guilty of the violations listed on his disciplinary ticket and was issued five days of full restrictions. (Investigation, Doc. 36-2, PageID790, 894).

52.     In the evening of August 17, 2020, Corrections Officer Browning advised that Mr. Bayong needed to be transferred to the jail's F-Pod to begin his period of isolation issued during the hearing over Mr. Bayong's August 13, 2020 disciplinary ticket, and Mr. Bayong did not immediately comply. (Incident Report, Doc. 36-3 ("Bayong stated he was not going to isolation"); Investigation, Doc. 36-7, PageID795, 832 ("Bayong asked for an explanation"); Officer Statements, Doc. 36-8, PageID881, 884, 893, 896 ("Inmate Bayong was refusing to be transferred to another pod."); Browning, Doc. 39-1 ("On August 17, 2020, Mr. Bayong refused verbal commands to move to the F-pod."); Caruso Report, Doc. 38-1, PageID983; *see also* Bayong, Doc. 31, PageID200, 269 ("They realized I didn't want to pack my stuff.")).

53.     In the evening of August 17, 2020, Corrections Officer Green was one of the officers who responded to the C-Pod to assist in transferring Mr. Bayong to the F-Pod. (Incident Report,

Doc. 36-3; Investigation, Doc. 36-7, PageID795; Officer Statements, Doc. 36-8, PageID881, 893).

54.    Corrections Officer Green placed Mr. Bayong in an escort position to move Mr. Bayong from the jail's C-Pod to the F-Pod the evening of August 17, 2020. (Incident Report, Doc. 36-3; Investigation, Doc. 36-7, PageID795; Officer Statements, Doc. 36-8, PageID881, 884, 893).

55.    Mr. Bayong's original cell the evening of August 17, 2020 was located on the second tier of the C-Pod. (Bayong, Doc. 31, PageID199).

56.    Mr. Bayong alleges that he was assaulted by corrections officers during his August 17, 2020 transfer to the F-Pod, but Mr. Bayong cannot identify any corrections officer who used force against him on August 17, 2020. (Bayong, Doc. 31, PageID198-99, 201-02 ("I don't know their names."), 204-05 ("I do not have any recollection of any corrections officers."), 209; *see also* Investigation, Doc. 36-7, PageID832 (Mr. Bayong "identified one of the officers as CO Fletts," who is not a Defendant in this lawsuit, during the November 6, 2020 interview conducted by FBI Agent Riegle); Plfs' Memo in Opp., Doc. 56, PageID1254 ("Mr. Bayong is quite sure one of the officers was Mr. Phipps. Mr. Bayong was not able to identify do *[sic]* not know the names of the others[.]"), 1256).

57.    Mr. Bayong does not know how many corrections officers came to his cell in the jail's C-Pod on August 17, 2020 to move him to the F-Pod. (Bayong, Doc. 31, PageID201, 204-05).

58.    Mr. Bayong does not have any recollection of the specific area of his body that was allegedly struck by a corrections officer inside his C-Pod cell on August 17, 2020. (Bayong, Doc. 31, PageID204).

59.    Mr. Bayong was not placed in handcuffs for or during his escort from the jail's C-Pod to the F-Pod on August 17, 2020. (Officer Statements, Doc. 36-8, PageID881 ("Bayong was holding onto both railings."), 893 ("Green explained that he placed Bayong in an escort position without handcuffs due to being on the second tier and knowing they would have to navigate the stairs."); Bayong, Doc. 31, PageID202, 206 (putting out his hands during deposition to demonstrate), 275 ("I was holding the railing"); Investigation, Doc. 36-7, PageID832 ("he tried to hold the stair railing"); Plfs' Memo in Opp., Doc. 56, PageID1255 ("Mr. Bayong held the railing")).

60.    Mr. Bayong alleges that he was pushed down the stairs on August 17, 2020, but Mr. Bayong does not remember who allegedly pushed him. (Bayong, Doc. 31, PageID198 ("I don't know the name."), 199 ("Somebody pushed me from the back."), 205, 209, 275-76, 279; *see also* Bayong Corrected Declaration, Doc. 87-1, PageID2022-23; Complaint, Doc. 1, PageID5 at ¶28-31; Proposed Amended Complaint, Doc. 28-1, PageID141 at ¶27-30; Amended Complaint, Doc. 37, PageID929 at ¶27-30).

61. Mr. Bayong alleges that he was pushed down the stairs on August 17, 2020, but Mr. Bayong does not remember how many stairs he allegedly fell down. (Bayong, Doc. 31, PageID205 ("I can't really remember.")).

62. Mr. Bayong alleges that he was pushed down the stairs on August 17, 2020, but Mr. Bayong does not remember what part of his body landed first. (Bayong, Doc. 31, PageID205-06 ("I can't really remember what actually happened. I can't really remember. It's been too long.")).

63. Mr. Bayong does not recall any corrections officer making any offensive comment to or using abusive language toward Mr. Bayong on August 17, 2020. (Bayong, Doc. 31, PageID210 ("I can't remember that day. So I can't remember."); *see also* Officer Statements, Doc. 36-8, PageID881, 884, 896).

64. Mr. Bayong does not know the names of any other inmate who may have observed the alleged events of August 17, 2020. (Bayong, Doc. 31, PageID202).

65. Corrections Officer Browning was in the C-Pod on August 17, 2020, but Corrections Officer Browning did use any force against Mr. Bayong. (Incident Report, Doc. 36-3; Browning, Doc. 39-1; *see also* Bayong, Doc. 31, PageID201; Plfs' Memo in Opp., Doc. 56, PageID1256).

66. In his sworn deposition testimony, Mr. Bayong does not accuse Corrections Officer Browning of doing anything beyond being present in the C-Pod and asking Mr. Bayong "to pack [his] stuff" on August 17, 2020. (Bayong, Doc. 31, PageID201, 269; *see also* Bayong Corrected Declaration, Doc. 87-1, PageID2022).

67. Corrections Officer Roberts was not in the C-Pod during the alleged events of August 17, 2020. (Bayong, Doc. 31, PageID212; Incident Report, Doc. 36-3).

68. Corrections Officer "Blankton" was not in the C-Pod during the alleged events of August 17, 2020. (Incident Report, Doc. 36-3).

69. Corrections Officer Green placed Mr. Bayong in an escort position on August 17, 2020 to transfer Mr. Bayong from the jail's C-Pod to the F-Pod. (Officer Statements, Doc. 36-8, PageID893).

70. Mr. Bayong held onto the railing as he walked down the stairs during his August 17, 2020 transport from the jail's C-Pod to the F-Pod. (Bayong, Doc. 31, PageID275; Officer Statements, Doc. 36-8, PageID881, 893; Investigation, Doc. 36-7, PageID832; Plfs' Memo in Opp., Doc. 56, PageID1255 ("Mr. Bayong held the railing")).

71. From Corrections Officer Green's perspective, Mr. Bayong "expressed his dead weight" upon "encounter[ing] the last two to three steps" and "fell forward catching himself on the floor with both hands." (Officer Statements, Doc. 36-8, PageID893; *see also* id. at PageID881 ("As he neared the bottom, Bayong appeared to go dead weight and fall to the

ground."), 884 ("as Bayong neared the bottom stairs, he obviously went dead weight"); Investigation, Doc. 36-7, PageID795).

72. Medical professionals were called to the jail's F-Pod to evaluate Mr. Bayong after he descended the stairs on August 17, 2020. (Incident Report, Doc. 36-3; Investigation, Doc. 36-7, PageID747, 795-97; Officer Statements, Doc. 36-8, PageID884, 893; *see also* Bayong, Doc. 31, PageID215).

73. When medical professionals tried to evaluate Mr. Bayong in the jail's F-Pod on August 17, 2020, Mr. Bayong was unwilling to engage in a full conversation about his health. (Investigation, Doc. 36-7, PageID747, 797 (note by Paramedic Goubeaux that "Detainee was very argumentative with medical, and would not let medical talk"); Incident Report, Doc. 36-3 ("Bayong became verbally aggressive towards medics, and refused all treatment"); *see also* Bayong, Doc. 31, PageID215 (Bayong advised the nurse "You can just leave me alone. Just leave me alone."), 282).

74. Paramedic Goubeaux was one of the medical professionals who responded to the jail's F-Pod to evaluate Mr. Bayong on August 17, 2020, and Mr. Bayong questioned Paramedic Goubeaux's credentials. (Investigation, Doc. 36-7, PageID747, 797).

75. The injury documented from the August 17, 2020 medical evaluation of Mr. Bayong was an abrasion to the top of Mr. Bayong's shin with no bleeding, deformities, or swelling. (Investigation, Doc. 36-7, PageID747, 797).

76. Mr. Bayong was examined by medical professionals in the jail's F-Pod on August 17, 2020, after Mr. Bayong's transfer into the pod, and, upon completion of the medical evaluation, Mr. Bayong walked up the pod's stairs, unassisted, to his new cell in the F-Pod. (Officer Statements, Doc. 36-8, PageID884, 893; *see also* Incident Report, Doc. 36-3).

77. Mr. Bayong was not always consistent with his medication regimen at the Butler County Jail. (Bayong, Doc. 31, PageID214).

78. Mr. Bayong and Mr. Adem were cellmates, or "bunkies," at the Butler County Jail sometime after the alleged events of August 17, 2020, and they were housed in the same cell for at least two weeks. (Adem Depo. I, Doc. 347).

79. Mr. Adem did not observe any injuries to Mr. Bayong's legs. (Adem Depo. I, Doc. 32, PageID351-52).

80. Mr. Adem did not observe Mr. Bayong experience any difficulty walking. (Adem Depo. I, Doc 32, PageID351-52).

81. On September 1, 2021, State Jail Inspector Klinton Hill, from the Ohio Department of Rehabilitation & Correction, Bureau of Adult Detention, sent a letter to the Warden of the Butler County Jail addressing the allegations that Mr. Bayong was "Dragged from his cell

and pushed down the stairs by an Officer" who "threatened to beat all Bayong Bayongs *[sic]* teeth out," and the allegations were deemed by the Bureau of Adult Detention to be "unfounded." (ODRC Letter, Doc. 36-6, PageID741; Fisher, Doc. 36-1, PageID687).

82.    State Jail Inspector Klinton Hill's September 1, 2021 letter determined, after the Ohio Department of Rehabilitation & Correction, Bureau of Adult Detention's review of the August 17, 2020 incident involving Mr. Bayong, that "jail staff reacted with the appropriate amount of force necessary to maintain safety and security." (ODRC Letter, Doc. 36-6, PageID741).

83.    State Jail Inspector Klinton Hill's September 1, 2021 letter determined, after the Ohio Department of Rehabilitation & Correction, Bureau of Adult Detention's review of the August 17, 2020 incident involving Mr. Bayong, that "no issues of non-compliance with Security Standards for Jails in Ohio were identified" in the Butler County Jail." (ODRC Letter, Doc. 36-6, PageID741).

84.    State Jail Inspector Klinton Hill's September 1, 2021 letter determined, after the Ohio Department of Rehabilitation & Correction, Bureau of Adult Detention's review of the August 17, 2020 incident, that the allegations that Mr. Bayong was "Dragged from his cell and pushed down the stairs by an Officer" who "threatened to beat all Bayong Bayongs *[sic]* teeth out" were "unfounded." (ODRC Letter, Doc. 36-6, PageID741).

85.    On October 20, 2020, Mr. Bayong and Mr. Adem were housed together in cell C-20. (Bayong Force Review, Doc. 36-4, PageID713, 715; Adem Force Review, Doc. 36-5, PageID726).

86.    On October 20, 2020, Mr. Bayong complained of a sore throat to jail medical staff. (Bayong, Doc. 31, PageID220-21, 282-83; Adem Depo. I, Doc. 32, PageID348).

87.    Due to Mr. Bayong's October 20, 2020 complaint of a sore throat, a medical professional came to Mr. Bayong's cell to assess him and take the temperature of both Mr. Bayong and Mr. Adem. (Bayong, Doc. 31, PageID283; Adem Depo. I, Doc. 32, PageID349; Investigation, Doc. 36-7, PageID748 ("they had their temperatures taken"), 832 ("The nurse took his temperature and told Bayong that it was high."), 835; Caruso Report, Doc. 38-1, PageID983).

88.    On October 20, 2020, Mr. Adem's temperature was taken by a medical professional at the Butler County Jail and Mr. Adem's "temperature was normal." (Adem Depo. I, Doc. 32, PageID349).

89.    On October 20, 2020, medical professionals at the Butler County Jail made the determination that Mr. Bayong and Mr. Adem needed to be "moved to H3 Pod for Medical Isolation." (Bayong Force Review, Doc. 36-4, PageID710; *see also* id at PageID709 ("ordered to be moved from C Pod to H3 Pod for medical isolation per Medical"), 713 ("Per medical staff the two detainees were to be transferred to H-Pod to be on medical isolation."); Adem Force Review, Doc. 36-5, PageID727-28; Officer Statements, Doc. 36-

8, PageID890, 915 ("Sergeant Smith told both inmates that they were being transferred due to medical reasons[.]")).

90.  On October 20, 2020, Corrections Officer Crowley "had been notified by medical staff that inmates Bayong Bayong and Ahmed Adem were to be transferred to H Pod for medical observation pertaining to COVID-19 concerns." (Officer Statements, Doc. 36-8, PageID890; *see also* Bayong Force Review, Doc. 36-4, PageID709-10, 713; Adem Force Review, Doc. 36-5, PageID727-28).

91.  Mr. Bayong and Mr. Adem were moved from cell C-20 to medical isolation, or quarantine, in the jail's H-Pod on October 20, 2020 for COVID-19 concerns. (Bayong, Doc. 31, Page231; Adem Depo. I, Doc. 32, PageID349 ("he told us that you guys are going to H Pod [ ] due to COVID concern"), 368; Adem Depo. II, Doc. 33, PageID406; Bayong Force Review, Doc. 36-4, PageID709-11, 713; Adem Force Review, Doc. 36-5, PageID725-29; Caruso Report, Doc. 38-1, PageID983).

92.  On October 20, 2020, Mr. Bayong and Mr. Adem were instructed by Corrections Officer Crowley over the cell's intercom to pack their belongings because they were being moved to the jail's "H Pod for COVID concern[s]." (Adem Depo. I, PageID352-54; *see also* Bayong, Doc. 31, PageID284; Bayong Force Review, Doc. 36-4, PageID713; Adem Force Review, Doc. 36-5, PageID726).

93.  Mr. Bayong and Mr. Adem did not immediately comply with the October 20, 2020 order of Corrections Officer Crowley to pack their belongings for transfer to quarantine. (Bayong, Doc. 31, PageID222-23, 224; Adem Depo. I, PageID353, 354, 356; Bayong Force Review, Doc. 36-4, PageID709-10, 713, 715-17; Adem Force Review, Doc. 36-5, PageID725-28; *see also* Caruso Report, Doc. 38-1, PageID983; Investigation, Doc. 36-7, PageID803-7, 814; Officer Statements, Doc. 36-8, PageID869, 890 ("Both inmates refused to gather their belongings and indicated they would not cooperate"), 905; Roberts, Doc. 34-1, PageID444; Adem Corrected Declaration, Doc. 86-1, PageID2014; Bayong Corrected Declaration, Doc. 87-1, PageID2024).

94.  When Mr. Bayong and Mr. Adem were ordered to pack their belongings on October 20, 2020 for transfer to quarantine, Mr. Bayong and Mr. Adem responded that they wanted to remain in their current housing unit. (Bayong, Doc. 31, PageID222; *see also* Adem Depo. I, Doc. 32, PageID352-53; Bayong Corrected Declaration, Doc. 87-1, PageID2024).

95.  Mr. Bayong was upset that he was being ordered to move into isolation for a COVID-19 quarantine on October 20, 2020. (Bayong, Doc. 31, PageID222-24).

96.  Mr. Adem questioned the orders of the corrections officers on October 20, 2020 because he did not feel he should have to move into a new cell since he was not experiencing any COVID-19 symptoms. (Bayong, Doc. 31, PageID224 ("[H]e asked the question, 'Why should I be moved when I'm not sick?'"), 284, 286; Investigation, Doc. 36-7, PageID835 ("Adem wanted an explanation for his move to quarantine, given that his temperature had

not been elevated."); Adem Depo. I, PageID353, 354; Adem Corrected Declaration, Doc. 86-1, PageID2014; Bayong Corrected Declaration, Doc. 87-1, PageID2024).

97.     After ordering Mr. Bayong and Mr. Adem, on October 20, 2020, to pack their belongings for transfer to a new cell, Corrections Officer Crowley radioed for assistance and placed the entire C-Pod on lockdown. (Officer Statements, Doc. 36-8, PageID890, 905; *see also* Adem Depo. I, Doc. 32, PageID352-53; Bayong Force Review, Doc. 36-4, PageID713, 715-17; Adem Force Review, Doc. 36-5, PageID726, 732).

98.     Corrections Officers Roberts, Schultz, Allen, Blanton, and Bartlett responded to Corrections Officer Crowley's October 20, 2020 request for assistance in the jail's C-Pod concerning the need to transfer Mr. Bayong and Mr. Adem to the H-Pod for medical isolation. (Bayong Force Review, Doc. 36-4, PageID713; Adem Force Review, Doc. 36-5, PageID725-26; Officer Statements, Doc. 36-8, PageID863, 869, 905, 909; Roberts, Doc. 34-1, PageID444).

99.     When Corrections Officers Roberts, Schultz, Allen, Blanton, and Bartlett responded to Corrections Officer Crowley's October 20, 2020 request for assistance in the jail's C-Pod, Mr. Bayong and Mr. Adem were standing in the doorway of cell C-20. (Officer Statements, Doc. 36-8, PageID863, 875, 905).

100.    On October 20, 2020, Corrections Officers Roberts gave verbal orders to both Mr. Bayong and Mr. Adem to pack their belongings. (Bayong Force Review, Doc. 36-4, PageID713, 715; Roberts, 34-1, PageID444).

101.    When corrections officers ordered Mr. Bayong and Mr. Adem to pack their belongings for transfer to a new cell on October 20, 2020, Mr. Adem responded that he needed to speak with a supervisor. (Bayong, Doc. 31, PageID284 ("So my bunkie asked the question, 'I need you guys to send a supervisor to come talk to me.'"), 286 (Mr. Adem "wanted to talk to a supervisor"); Adem Depo. I, Doc. 32, PageID353 ("I just want to know from the supervisor."), 354 (asked to speak to a supervisor "[m]ultiple times"), 356); Adem Corrected Declaration, Doc. 86-1, PageID2014; Bayong Corrected Declaration, Doc. 87-1, PageID2024).

102.    When ordered by corrections staff on October 20, 2020 to pack their belongings to transfer into a new cell, Mr. Bayong and Mr. Adem questioned the corrections officers and "ask[ed] to talk to [a] supervisor." (Bayong, Doc. 31, PageID222, 223; *see also* id. at PageID224 ("We just wanted to ask some questions."), 284; Adem Depo. I, Doc. 32, PageID353 ("I'm like, well, I was about to ask a question. I just want to know from the sergeant."), 354, 356; Adem Corrected Declaration, Doc. 86-1, PageID2014).

103.    In a correctional facility, a detainee who questions the lawful orders of a corrections officer or who demands to speak with a higher-ranking officer is effectively disobeying, which is a form of resistance. (Caruso Report, Doc. 38-1, PageID985).

104.    In a correctional facility, a detainee who questions the lawful orders of a corrections officer or who demands to speak with a higher-ranking officer presents a real threat to institutional security, as the normal facility operations are disturbed. (Caruso Report, Doc. 38-1, PageID985).

105.    In accordance with the National Detention Standards, corrections officers and detainees must be protected "from harm by ensuring that facility security is maintained and that events which may pose a risk of harm are prevented." (Caruso Report, Doc. 38-1, PageID985, *citing* NDS 2.3(I), Facility Security & Control ICE).

106.    Corrections Officers Roberts and Blanton entered cell C-20 to again order Mr. Bayong and Mr. Adem to pack their belongings for transfer to a new cell on October 20, 2020. (Bayong Force Review, Doc. 36-4, PageID713; Roberts, Doc. 34-1, PageID444).

107.    Inside cell C-20 on October 20, 2020, Corrections Officer Roberts directed his verbal orders to Mr. Bayong while Corrections Officer Blanton verbally addressed Mr. Adem. (Bayong Force Review, Doc. 36-4, PageID713; Adem Force Review, Doc. 36-5, PageID725, 727-28, 730).

108.    When Corrections Officer "Blankton" gave Mr. Adem a specific order to pack his belongings on October 20, 2020, Mr. Adem responded by asking to speak to a supervisor. (Adem Depo. I, Doc. 32, PageID356 ("I wanted to talk to the sergeant.")).

109.    Mr. Bayong does not remember the number of corrections officers who entered the cell he shared with Mr. Adem on October 20, 2020, cell C-20, but Mr. Bayong thinks "there were, like, I don't know, like six or so - - or five" corrections officers. (Bayong, Doc. 31, PageID224-25, 228 ("I don't know. I can't remember. I can't remember."), 286 ("I don't really know his name.")).

110.    Mr. Adem testified that there were seven individuals inside cell C-20 at the time of the October 20, 2020 use of force. (Adem Depo. I, Doc. 32, PageID361-62).

111.    Corrections Officer Roberts ordered Mr. Bayong and Mr. Adem to back up inside cell C-20. (Officer Statements, Doc. 36-8, PageID905, 909).

112.    From Corrections Officer Roberts's perspective on October 20, 2020, Mr. Bayong turned toward the officer and "raised his hands" inside cell C-20 such that Corrections Officer Roberts believed Mr. Bayong might strike the officer. (Bayong Force Review, Doc. 36-4, PageID713; *see also* Roberts, Doc. 34-1, PageID444; Officer Statements, Doc. 36-8, PageID869, 905).

113.    Based on Mr. Bayong's movement toward Corrections Officer Roberts inside cell C-20 on October 20, 2020, Corrections Officer Roberts perceived Mr. Bayong to present a threat to officer safety and/or institutional security. (Roberts, Doc. 34-1, PageID444-45; *see also* Caruso Report, Doc. 38-1, PageID984-85, 986).

114. If a corrections officer's assessment of a situation reasonably leads them to believe that they may be assaulted by an inmate who is in close proximity to them, the corrections officer does not have to wait to actually be assaulted before reacting with reasonable force. (Caruso Report, DOC. 38-1, PageID986; *see also* Post Order on ICE Detainees, Doc. 56-8; Post Order on Security, Doc. 56-9).

115. Based on Mr. Bayong's movement toward Corrections Officer Roberts inside cell C-20 on October 20, 2020 and the perceived threat, Corrections Officer Roberts "delivered closed fist reactionary strikes." (Bayong Force Review, Doc. 36-4, PageID713; *see also* Officer Statements, Doc. 36-8, PageID905; Bayong Force Review, Doc. 36-4, PageID711-12; Roberts, Doc. 34-1, PageID444-45; Caruso Report, Doc. 38-1, PageID983-85, 986).

116. Corrections Officer Bartlett observed Corrections Officer Roberts struggle to gain control of Mr. Bayong, at which time Corrections Officer Bartlett assisted Corrections Officer Roberts in redirecting Mr. Bayong to the floor. (Bayong Force Review, Doc. 36-4, PageID713, 715; *see also* id. at PageID709; Officer Statements, Doc. 36-8, PageID869, 905).

117. Inside cell C-20 on October 20, 2020, Corrections Officers Roberts and Bartlett gave Mr. Bayong additional orders to comply with the officers. (Bayong Force Review, Doc. 36-4, PageID710, 713; Officer Statements, Doc. 36-8, PageID869).

118. From the perspective of Corrections Officers Bartlett and Roberts, Mr. Bayong remained combative, as Mr. Bayong would not readily surrender his hands; therefore, Corrections Officer Bartlett "delivered two closed fist strikes to [Mr.] Bayong's mid-section" to gain Mr. Bayong's compliance. (Officer Statements, Doc. 36-8, PageID869; *see also* Bayong Force Review, Doc. 36-4, PageID709-13; Roberts, Doc. 34-1, PageID445).

119. Corrections Officers Bartlett and Roberts were able to successfully secure Mr. Bayong in handcuffs inside cell C-20 on October 20, 2020, and the handcuffs were gap checked and double locked. (Bayong Force Review, Doc. 36-4, PageID713; Officer Statements, Doc. 36-8, PageID869, 905).

120. As Corrections Officer Roberts addressed Mr. Bayong at cell C-20 on October 20, 2020, Corrections Officer Blanton approached Mr. Adem in cell C-20 "with an extended open hand to maintain distance, while ordering him to step back out of the doorway." (Adem Force Review, Doc. 36-5, PageID725; *see also* Officer Statements, Doc. 36-8, PageID875).

121. From Corrections Officer Blanton's perspective, Mr. Adem "smacked" away Corrections Officer Blanton's hand. (Adem Force Review, Doc. 36-5, PageID725, 727; Officer Statements, Doc. 36-8, PageID875; Caruso Report, Doc. 38-1, PageID984; *see also* Officer

Statements, Doc. 36-8, PageID863; Adem Force Review, Doc. 36-5, PageID728 ("He refused Officer Blanton's order and slapped his hand away.")).

122. Corrections Officer Allen observed Mr. Adem "smack CO Blanton's hand" in the jail's C-Pod on October 20, 2020. (Officer Statements, Doc. 36-8, PageID863).

123. Based on Mr. Adem's movement in relation to Corrections Officer Blanton at cell C-20 on October 20, 2020, Corrections Officer Blanton perceived a threat to safety and institutional security, and Corrections Officer Blanton "performed a takedown to gain control of inmate Adem." (Adem Force Review, Doc. 36-5, PageID725; *see also* id at PageID726-30, 732; Officer Statements, Doc. 36-8, PageID875, 905 ("Ahmed Adem was involved in an altercation with C.O. Blanton"); Caruso Report, Doc. 38-1, PageID984-86).

124. Immediately upon the takedown by Corrections Officer Blanton on October 20, 2020, Mr. Adem followed orders and was successfully secured in handcuffs. (Adem Force Review, Doc. 36-5, PageID725, 727-30; Officer Statements, Doc. 36-8, PageID875).

125. Mr. Adem was not wearing a mask in cell C-20 at the time of the October 20, 2020 use of force. (Adem Depo. I, Doc. 32, PageID358-59; *see also* Adem Depo. II, Doc. 33, PageID429).

126. During his deposition, when asked for the name of the corrections officer who "laid hands" on Mr. Adem on October 20, 2020, Mr. Bayong answered, "I think Blankton or something. I can't really remember. I can't really remember. I think Blankton or something. Blinkton? I don't know. I can't remember his name." (Bayong, Doc. 31, PageID226; *see also* id. at PageID233, 285-86).

127. Mr. Adem did not personally see any corrections officer's specific actions against Mr. Bayong during October 20, 2020 use of force. (Adem Depo. I, Doc. 32, PageID362).

128. The only injury Mr. Bayong observed to Mr. Adem after the October 20, 2020 use of force was Mr. Adem "had blood coming out from his - - He had blood coming out. I can't remember where it was coming out." (Bayong, Doc. 31, PageID234).

129. Corrections Officer Browning was not present for the October 20, 2020 use of force. (Bayong, Doc. 31, PageID230; Adem Depo. I, Doc. 32, PageID364; Plfs' Motion for Leave, Doc. 28, PageID134-35 ("L. Browning was not one of the correctional officers involved in the October 20, 2020 incident.")).

130. Corrections Officer Browning never used any force against Mr. Adem while Mr. Adem was detained in the Butler County Jail. (Adem Depo. I, Doc. 32, PageID356; Browning, Doc. 39-1; *see also* Plfs' Mtn for Leave, Doc. 28, PageID134-35).

131. Corrections Officer Browning never used any force against Mr. Bayong while Mr. Bayong was detained at the Butler County Jail. (Browning, Doc. 39-1; *see also* Bayong, Doc. 31, PageID269, 201-02; Plfs' Mtn for Leave, Doc. 28, PageID134-35).

132. Corrections officers did not expect that they would have to use force when responding to Corrections Officer Crowley's October 20, 2020 call for assistance. (Roberts, Doc. 34-1, PageID445; *see also* Bayong Force Review, Doc. 36-4, PageID710-14; Adem Force Review, Doc. 36-5, PageID725, 728-30).

133. Corrections officers did not have any plan to use force when they entered the jail's C-Pod in response to Corrections Officer Crowley's October 20, 2020 call for assistance. (Roberts, Doc. 34-1, PageID445; *see also* Bayong Force Review, Doc. 36-4, PageID710-14; Adem Force Review, Doc. 36-5, PageID725, 728-30).

134. No force involving Mr. Bayong or Mr. Adem on October 20, 2020 was used as punishment. (Roberts, Doc. 34-1, PageID445; Bayong Force Review, Doc. 36-4, PageID709-12, 15; Bayong Force Review, Doc. 34-5, PageID725-30; Officer Statements, Doc. 36-8, PageID863, 869, 872, 875, 887, 890, 905, 909; Caruso Report, Doc. 38-1, PageID983-84).

135. In general, an inmate's noncompliance with officer commands presents a safety and/or security threat. (Caruso Report, Doc. 38-1, PageID984-86).

136. Medical professionals evaluated Mr. Bayong and Mr. Adem in the C-Pod a few minutes after the October 20, 2020 use of force. (Bayong, Doc. 31, PageID234-35; Adem Depo. I, Doc. 32, PageID363; Adem Depo. II, Doc. 33, PageID405; Investigation, Doc. 36-7, PageID813; Bayong Force Review, Doc. 36-4, PageID709-10, 713, 724; Adem Force Review, Doc. 36-5, PageID725-26, 728, 736; Officer Statements, Doc. 36-8, PageID875, 890).

137. In response to the October 20, 2020 use of force, the jail's Medical Supervisor and Sergeant Smith arrived to the housing unit to assess the situation. (Officer Statements, Doc. 36-8, PageID875, 890, 915; Investigation, Doc. 36-7, PageID813 (Note by Medical Supervisor); Bayong Force Review, Doc. 36-4, PageID724; Adem Force Review, Doc. 36-5, PageID726 ("Medic Supervisor Carla Fisher was called to C-pod to evaluate both Detainees[.]")).

138. From the October 20, 2020 use of force involving Mr. Adem, "a small abrasion on his top lip" with "very little blood" was noted by the Jail's Medical Supervisor, along with documentation of Mr. Adem's complaint of a headache despite "no deformities, bumps, bleeding" or difficulty "moving his head side [to] side." (Investigation, Doc. 36-7, PageID813; *see also id.* at PageID749; Adem Depo II, Doc. 33, PageID405).

139. Mr. Adem does not remember whether he sustained any bruising from the October 20, 2020 use of force. (Adem Depo. I, Doc. 32, PageID367).

140. Mr. Adem did not complain to any medical professional on October 20, 2020 about pain in his ribs. (Adem Depo. I, Doc. 32, PageID367-68; *see also* Adem Force Review, Doc. 36-5, PageID736; Investigation, Doc. 36-7, PageID813).

141. The only injury Mr. Adem observed to Mr. Bayong after the October 20, 2020 use of force was "a bloody mouth." (Adem Depo. I, Doc. 32, PageID369).

142. From the October 20, 2020 use of force involving Mr. Bayong, "some mild swelling under [his] left eye" was noted by the Jail's Medical Supervisor, with "no deformities" or "tenderness" to Mr. Bayong's neck or head. (Bayong Force Review, Doc. 36-4, PageID724).

143. Mr. Bayong initially alleged that, from the October 20, 2020 use of force, he lost a tooth; however, now Mr. Bayong alleges that he merely "had an increase of his gum" because "the teeth was just pushed one into another." (Bayong, Doc. 31, PageID236 and 252; *see also* Investigation, Doc. 36-7, PageID745; Complaint, Doc. 1, PageID1 at ¶1, PageID2 at ¶2, PageID5 at ¶26; Plfs' Mtn for Leave, Doc. 28, PageID135 ("although Mr. Bayong initially believed that he lost a tooth during the October 20 incident, he did not[.]")).

144. Mr. Bayong had a gap in his teeth that existed before October 20, 2020. (Bayong, Doc. 31, PageID255-56; Investigation, Doc. 36-7, PageID747 ("the gap in the front is how his teeth naturally grew in"), 750 (Mr. Bayong's wife was interviewed by detectives and "stated that Bayong has always had a gap in his teeth"); *see also* Plfs' Mtn for Leave, Doc. 28, PageID135 ("the existing gap")).

145. Mr. Bayong was examined by the Butler County Jail's dentist, who confirmed that Mr. Bayong did not lose a tooth. (Investigation, Doc. 36-7, PageID747 ("Bayong was seen by Dentist William Floyd, who inspected his mouth and teeth. Dr. Floyd found that Bayong still has all of his teeth and the gap in the front is how his teeth naturally grew in."), 749, 750 ("dentist Dr. Floyd examined Bayong and noted that he was not missing a tooth and also provided an X-ray"); Bayong, Doc. 31, PageID252-53 ("I can't remember what he said"); Bayong Corrected Declaration, Doc. 87-1, PageID2026 ("I was taken to see a dentist and the dentist said that he counted my teeth and that I did not have any missing teeth.")).

146. The Butler County Jail's dentist, William Floyd, took an x-ray of Mr. Bayong's mouth and confirmed "there was no evidence of any trauma to inmate Bayong's mouth and that all of his teeth were accounted for." (Investigation, Doc. 36-7, PageID749; *see also* id. at PageID747, 750 ("dentist Dr. Floyd examined Bayong and noted that he was not missing a tooth and also provided an X-ray")).

147. After the October 20, 2020 use of force in cell C-20, Mr. Bayong and Mr. Adem were escorted from the jail's C-Pod to the H-Pod, where they remained cellmates, or "bunkies." (Adem Depo. I, Doc. 32, PageID368-69).

148. After being cleared by the medical professionals on October 20, 2020, Mr. Bayong and Mr. Adem were escorted down the corridor into the jail's H-Pod without any major issues. (Officer Statements, Doc. 36-8, PageID902, 905).

149. As Mr. Bayong was escorted from the jail's C-Pod to the H-Pod on October 20, 2020, he was observed "turning around towards the officers' [sic] as they walked down the hallway" such that Corrections Officer Roberts "on multiple occasions had to direct [Mr.] Bayong to turn around and continue walking." (Officer Statements, Doc. 36-8, PageID866).

150. When Mr. Bayong arrived at his new H-Pod cell on October 20, 2020, he was ordered into the cell, where his handcuffs were removed. (Officer Statement, Doc. 36-8, PageID912).

151. Corrections Officer Schultz, who was involved in the October 20, 2020 transfer of Mr. Bayong and Mr. Adem to the jail's H-Pod, remained in the H-Pod's "day area" with Mr. Adem while Mr. Bayong was placed inside his H-Pod cell, and Corrections Officer Schultz observed "no physical confrontation" in the H-Pod between Mr. Bayong and Corrections Officer Roberts. (Officer Statements, Doc. 36-8, PageID912).

152. Corrections Officer Crist, who was assigned to the H-Pod on October 20, 2020 during the transfer of Mr. Bayong and Mr. Adem from the C-Pod, did not observe any physical altercation involving Mr. Bayong or Mr. Adem inside the H-Pod. (Officer Statement, Doc. 36-8, PageID887).

153. Mr. Adem did not personally see anything that allegedly occurred between Mr. Adem and Corrections Officer Roberts inside the H-Pod cell. (Adem Depo. I, Doc. 32, PageID370).

154. The only use of force involving Mr. Adem on October 20, 2020 occurred in the jail's C-Pod before Mr. Adem's placement in the H-Pod. (Adem Depo. I, Doc. 32, PageID370).

155. The surveillance camera in the jail's H-Pod is "situated high above the cell block," out of physical reach of inmates and corrections officers. (Officer Statements, Doc. 36-8, PageID866).

156. On October 22, 2020, Mr. Bayong advised medical professionals at the Butler County Jail that he had no medical issues. (Bayong, Doc. 31, PageID240).

157. On October 23, 2020, Mr. Bayong advised the jail's mental health professionals, called forensics, that he "was all right." (Bayong, Doc. 31, PageID240-41; *see also* id. at PageID242 ("That was what I told forensics. 'I don't want to talk to you guys. And I'm fine.' I was fine.")).

158. Aside from the October 20, 2020 use of force in the jail's C-Pod, Mr. Bayong did not observe any corrections officer lay hands on Mr. Adem in the Butler County Jail. (Bayong, Doc. 31, PageID242).

159. A Subject Management Report was completed for the October 20, 2020 use of force involving Mr. Bayong. (Bayong Force Review, Doc. 36-4; *see also* Fisher, Doc. 36-1, PageID686).

160. A Subject Management Report was completed for the October 20, 2020 use of force involving Mr. Adem. (Adem Force Review, Doc. 36-5; *see also* Fisher, Doc. 36-1, PageID686).

161. A use of force review over the October 20, 2020 use of force involving Mr. Bayong was conducted by the Butler County Sheriff's Office. (Bayong Force Review, Doc. 36-4; *see also* Fisher, Doc. 36-1, PageID686).

162. As part of the use of force review over the October 20, 2020 use of force involving Mr. Bayong, a jail lieutenant, Lt. Clendenin, was advised of and reviewed the circumstances of the use of force. (Bayong Force Review, Doc. 36-4, PageID710, 714).

163. A use of force review over the October 20, 2020 use of force involving Mr. Adem was conducted by the Butler County Sheriff's Office. (Adem Force Review, Doc. 36-5; *see also* Fisher, Doc. 36-1, PageID686).

164. As part of the use of force review over the October 20, 2020 use of force involving Mr. Adem, a jail lieutenant, Lt. Clendenin, was advised of and reviewed the circumstances of the use of force. (Adem Force Review, Doc. 36-5, PageID728, 731).

165. The October 20, 2020 use of force involving Mr. Bayong was again investigated by the Butler County Sheriff's Office during the civil rights investigation it conducted from November 2020 through January 2021. (Investigation, Doc. 36-7, PageID747, 805-10, 814-15, 828-30, 832-33; *see also* Officer Statements, Doc. 36-8).

166. The October 20, 2020 use of force involving Mr. Adem was again investigated by the Butler County Sheriff's Office during the civil rights investigation it conducted from November 2020 through January 2021. (Investigation, Doc. 36-7, PageID748-49, 803-04, 813-14, 816, 824-27, 835-37; *see also* Officer Statements, Doc. 36-8).

167. As part of the Butler County Sheriff's Office's civil rights investigation, Corrections Officers Allen, Bartlett, Blanton, Crist, Crowley, Roberts, and Schultz and Sergeant Smith were interviewed about the October 20, 2020 use of force involving Mr. Bayong and Mr. Adem, and the interviewed corrections officers reviewed and signed a summary of their interviews written by a sergeant. (Officer Statements, Doc. 36-8, PageID863, 866, 869, 872, 875, 878, 887, 905-06, 909, 912, 915; *see also* Investigation, Doc. 36-7, PageID837-58).

168. As part of the Butler County Sheriff's Office's civil rights investigation, Sgt. Smith was interviewed about the October 20, 2020 use of force involving Mr. Bayong and Mr. Adem, and Sgt. Smith reviewed and signed a summary of his interview written by Sgt. Fuller. (Officer Statements, Doc. 36-8, PageID915; *see also* Investigation, Doc. 36-7, PageID857).

169. Mr. Bayong and Mr. Adem were each given a disciplinary ticket for their misconduct on October 20, 2020. (Investigation, Doc. 36-7, PageID749, 790, 815-16).

170.  The disciplinary tickets issued to Mr. Bayong and Mr. Adem for their October 20, 2020 misconduct listed violations of the jail's rules against disobeying a direct order given by a staff member, fighting with any staff member, and participating in any act that constitutes a threat to the facility or staff. (Investigation, Doc. 36-7, PageID749, 815-16; *see also* id. at PageID790; Bayong Force Review, Doc. 36-4, PageID717; Adem Force Review, Doc. 36-5, PageID726).

171.  The hearing over Mr. Bayong's October 20, 2020 disciplinary ticket was conducted on October 21, 2021, and Mr. Bayong was found guilty and given 15 days full restriction. (Investigation, Doc. 36-7, PageID789-90).

172.  On October 29, 2020, a review was conducted of the discipline imposed on Mr. Bayong at his October 21, 2020 disciplinary hearing, and "[t]he decision was made to continue the disciplinary restrictions at this time due to the severity of the rule violation." (Investigation, Doc. 36-7, PageID789).

173.  The hearing over Mr. Adem's October 20, 2020 disciplinary ticket was conducted on October 21, 2021, and Mr. Adem was found guilty and given disciplinary restrictions. (Investigation, Doc. 36-7, PageID817).

174.  On October 29, 2020, a review was conducted of the discipline imposed on Mr. Adem at his October 21, 2020 disciplinary hearing, and "[t]he decision was made to continue the disciplinary restrictions at this time due to the severity of the rule violation." (Investigation, Doc. 36-7, PageID817).

175.  On September 1, 2021, State Jail Inspector Klinton Hill, from the Ohio Department of Rehabilitation & Correction, Bureau of Adult Detention, sent a letter to the Warden of the Butler County Jail addressing allegations that, on October 20, 2020, Mr. "Bayong and his cellmate were told to pack their belongings to be moved to an isolation cell due to possibly being COVID-19 positive" and "5 to 6 Officers began to yell and beat them," which were deemed by the Bureau of Adult Detention to be "unfounded." (ODRC Letter, Doc. 36-6, PageID740; Fisher Doc. 36-1, PageID687).

176.  State Jail Inspector Klinton Hill's September 1, 2021 letter determined, after the Ohio Department of Rehabilitation & Correction, Bureau of Adult Detention's review of the October 20, 2020 incident involving Mr. Bayong and his cellmate, that "jail staff reacted with the appropriate amount of force," which was "used to maintain safety and security of the jail." (ODRC Letter, Doc. 36-6, PageID740).

177.  State Jail Inspector Klinton Hill's September 1, 2021 letter determined, after the Ohio Department of Rehabilitation & Correction, Bureau of Adult Detention's review of the October 20, 2020 incident involving Mr. Bayong and his cellmate, that "no issues of non-compliance with Security Standards for Jails in Ohio were identified" in the Butler County Jail." (ODRC Letter, Doc. 36-6, PageID740).

178. State Jail Inspector Klinton Hill's September 1, 2021 letter determined, after the Ohio Department of Rehabilitation & Correction, Bureau of Adult Detention's review of the October 20, 2020 incident, that the allegations that Mr. Bayong and his cellmate were "beat[en]" were "unfounded." (ODRC Letter, Doc. 36-6, PageID740).

179. Mr. Bayong alleges that he was pushed into a wall by Corrections Officer Roberts after leaving an attorney visit on October 28, 2020, but Mr. Bayong does not remember the specifics of what allegedly occurred between him and Corrections Officer Roberts. (Bayong, Doc. 31, PageID247-49).

180. After he finished a meeting with his attorney on October 28, 2020, Mr. Bayong was met in the jail hallway by Corrections Officer Roberts for escort back to Mr. Bayong's cell, and Mr. Bayong tried to get back into the visitation room, which is not allowed. (Bayong, Doc. 31, PageID242-43; Officer Statements, Doc. 36-8, PageID905).

181. When Mr. Bayong attempted to get back into the visitation room after finishing his meeting with his attorney on October 28, 2020, Corrections Officer Roberts advised Mr. Bayong, "No, you can't go in there." (Bayong, Doc. 31, PageID243; *see also* Officer Statements, Doc. 36-8, PageID905).

182. Upon seeing Mr. Bayong make "some gestures with his fists" and Mr. Bayong asking Corrections Officer Roberts if he "wanted to fight again," Corrections Officer Roberts placed Mr. Bayong against a wall, on October 28, 2020, for compliance. (Officer Statements, Doc. 36-8, PageID905-06; *see also* Bayong, Doc. 31, PageID246-48).

183. Mr. Bayong alleges that he was pushed into a wall by Corrections Officer Roberts after leaving an attorney visit on October 28, 2020, but Mr. Bayong does not know if he experienced pain or injury from the alleged October 28, 2020 force. (Bayong, Doc. 31, PageID249).

184. While detained in the Butler County Jail, Mr. Bayong knew how to file an inmate grievance, or lodge a complaint, if he was upset with the treatment he was receiving from jail staff. (Bayong, Doc. 31, PageID219-20; *see also* Caruso Report, Doc. 38-1, PageID986).

185. Mr. Bayong initialed and signed his understanding of the Butler County Jail Inmate Information Sheet during his June 5, 2020 booking. (Investigation, Doc. 36-7, PageID766).

186. Mr. Bayong acknowledged receiving the National Detainee Handbook at the Butler County Jail during his June 5, 2020 booking. (Investigation, Doc. 36-7, PageID766).

187. Mr. Bayong did not file any inmate grievance about a 2020 occurrence in the Butler County Jail. (Bayong, Doc. 31, PageID249).

188. Mr. Adem read the Butler County Jail rules and did not file any inmate grievance about a 2020 occurrence in the Butler County Jail. (Adem Depo. II, Doc. 33, PageID418-19; *see also* Adem Depo. I, Doc. 32, PageID383-84).

189. Mr. Adem never filed any medical requests or kites for medical attention at the Butler County Jail. (Adem Depo. I, Doc. 32, PageID373).

190. At the Butler County Jail, detainees have several procedures available to them to communicate with jail staff, medical staff, lawyers, the court system, family, and ICE, including, but not limited to, the jail's detainee grievance procedure, telephones, written correspondence, and internal requests. (Caruso Report, Doc. 38-1, PageID986; *see also* Bayong, Doc. 31, PageID219-20. 249; Adem Depo. I, Doc. 32, PageID373, 378-80, 383-84; Adem Depo. II, Doc. 33, PageID418-19; Adem Corrected Declaration, Doc. 86-1, PageID2017 ("I called my mom")).

191. A civil rights investigation was launched by the Butler County Sheriff's Office on November 3, 2020 regarding a complaint about ICE detainees being mistreated in the jail. (Investigation, Doc. 36-7, PageID745).

192. Mr. Bayong was interviewed multiple times during the Butler County Sheriff's Office's civil rights investigation. (Investigation, Doc. 36-7, PageID745-47; *see also* Bayong, Doc. 31, PageID253-54).

193. Mr. Adem was interviewed multiple times during the Butler County Sheriff's Office's civil rights investigation. (Investigation, Doc. 36-7, PageID745, 747-49; *see also* Adem Depo. I, Doc. 32, PageID376-77).

194. As part of the Butler County Sheriff's Office's civil rights investigation, two detectives interviewed Mr. Bayong on November 4, 2020. (Investigation, Doc. 36-7, PageID745).

195. Mr. Bayong stopped participating in his November 4, 2020 interview with Detectives Hensley and Detective Turner, saying he did not want to talk with the detectives. (Investigation, Doc. 36-7, PageID745; *see also* Bayong, Doc. 31, PageID254).

196. As part of the Butler County Sheriff's Office's civil rights investigation, two detectives tried to interview Mr. Adem on November 4, 2020, but Mr. Adem refused to speak with the detectives. (Investigation, Doc. 36-7, PageID745).

197. As part of the Butler County Sheriff's Office's civil rights investigation, two detectives tried, a second time, to interview Mr. Adem on November 6, 2020. (Investigation, Doc. 36-7, PageID747; *see also* Adem Depo. I, Doc. 32, PageID376).

198. Lawyers on behalf of Mr. Adem were present for the Butler County Sheriff's Office's November 6, 2020 interview of Mr. Adem. (Adem Depo. I, Doc. 32, PageID377; Investigation, Doc. 36-7, PageID745).

199. As part of the Butler County Sheriff's Office's civil rights investigation, two detectives tried, a second time, to interview Mr. Bayong on November 6, 2020. (Investigation, Doc. 36-7, PageID745).

200. Lawyers on behalf of Mr. Bayong were present for the Butler County Sheriff's Office's November 6, 2020 interview of Mr. Bayong. (Investigation, Doc. 36-7, PageID745).

201. Mr. Bayong testified at his deposition that he told the detectives, during the Butler County Sheriff's Office's civil rights investigation, what allegedly happened to Mr. Bayong at the Butler County Jail; however, Mr. Bayong "can't remember everything [he] told them." (Bayong, Doc. 31, PageID253-54).

202. Mr. Adem testified at the first segment of his deposition, on October 17, 2022, that he was truthful in his answers to the detectives' questions during the Butler County Sheriff's Office's civil rights investigation. (Adem Depo. I, Doc. 32, PageID377-78).

203. The Butler County Sheriff's Office's civil rights investigation included an interview with another inmate, Mantas Alberto Petrauskas, which was considered by the Butler County Sheriff's Office. (Investigation, Doc. 36-7, PageID749).

204. The Butler County Sheriff's Office's civil rights investigation considered a statement from another inmate, Mory Keita, that was submitted to the Sheriff's Office by Mr. Keita's attorney. (Investigation, Doc. 36-7, PageID749).

205. As part of the Butler County Sheriff's Office's civil rights investigation, Detective Lambert and Detective Phillips "met with Bayong's wife and got a taped statement from her" in which Mr. Bayong's wife confirmed that Mr. Bayong "has always had a gap in his teeth on top and bottom." (Investigation, Doc. 36-7, PageID750).

206. Mr. Bayong and Mr. Adem were interviewed by an FBI agent regarding their detention in the Butler County Jail. (Investigation, Doc. 36-7, PageID745 (documenting presence of FBI Agent Mike Reigle), 831-36 (FBI summaries of November 2020 interviews); Tramonte Depo., Doc. 65, PageID1624-25; Bayong, Doc. 31, PageID253-54, 257 ("I remember I spoke to the FBI."); Adem Depo. I, Doc. 32, PageID377).

207. Mr. Adem testified at the first segment of his deposition, on October 17, 2022, that after the October 20, 2020 use of force, the FBI conducted an investigation, but Mr. Adem has no knowledge of the outcome of the FBI investigation. (Adem Depo. I, Doc. 32, PageID380-81).

208. "It would be hard to say that all" 16 of "the corrections officers that we[re] interviewed" over the course of 21 interviews during the Butler County Sheriff's Office's civil rights investigation "were in collusion with each other against inmates Bayong and Adem." (Investigation, Doc. 36-7, PagID750; *see also* id. at PageID863-924).

209. During a federal inspection of the Butler County Jail, Mr. Adem was selected to speak with the federal inspector about Butler County Jail conditions, but Mr. Adem "never heard nothing back from nobody." (Adem Depo. I, Doc. 32, PageID378; Adem Depo. II, Doc. 33, PageID431).

210. Mr. Bayong does not know the identity of any corrections officer who allegedly assaulted an inmate other than Mr. Bayong or Mr. Adem. (Bayong, Doc. 31, PageID258, 261-62).

211. Mr. Bayong did not personally observe any use of force against Mr. Adem during Mr. Adem's July 21, 2020 booking process. (Bayong, Doc. 31, PageID262).

212. After he was transported from the Butler County Jail to the Calhoun County Jail, Mr. Adem did not make any requests for medical care and did not receive medical care beyond his initial medical screening upon intake at the Calhoun County Jail. (Adem Depo. I, Doc. 32, PageID328).

213. After his release from the Calhoun County Jail in October 2021, Mr. Adem lived with his parents in Reynoldsburg Ohio until he was booked into the Southeastern Ohio Regional Jail. (Adem Depo. I, Doc. 32, PageID325, 327-28).

214. Mr. Adem was transported from the Southeastern Ohio Regional Jail directly to Lorain Correctional Institution. (Adem Depo. I, Doc. 32, PageID324-25).

215. Mr. Adem entered Lorain Correctional Institution in August 2022 to serve a sentence for a parole violation. (Adem Depo. I, Doc. 32, PageID324).

216. As of his October 17, 2022 deposition, Mr. Adem was "on the deportation list." (Adem Depo. I, Doc. 32, PageID325-26).

217. Mr. Adem came to the United States December 10, 1999 as a refugee. (Adem Depo. I, Doc. 32, PageID331-32).

218. Mr. Adem's most recent employment was in 2014, before he went to prison, and Mr. Adem worked in a warehouse. (Adem Depo. I, Doc. 32, PageID326).

219. Mr. Adem does not recall the wages he earned during his last period of employment. (Adem Depo. I, Doc. 32, PageID326).

220. No medical professional has ever advised Mr. Adem that he is not physically capable of employment. (Adem Depo. I, Doc. 32, PageID327).

221. Mr. Adem was involved in two car accidents prior to his detention at the Butler County Jail, and Mr. Adem treated with a chiropractor for back and neck pain after the car accidents. (Adem Depo. I, Doc. 32, PageID374-75).

222. Mr. Adem has not treated with a chiropractor since his release from the Butler County Jail. (Adem Depo. I, Doc. 32, PageID375).

223. Mr. Adem has not received any mental health diagnosis since his detention in the Butler County Jail. (Adem Depo. I, Doc. 32, PageID375).

224. Mr. Bayong came to the United States in 2018 to get married to Veronica. (Bayong, Doc. 31, PageID172-73, 178-79, 181-82).

225. Mr. Bayong was placed into the custody of ICE due to immigration violation(s). (Bayong, Doc. 31, PageID194).

226. In March 2021, a Franklin County, Ohio jury found Mr. Bayong guilty of domestic violence, and Mr. Bayong was sentenced to 11 months in prison plus no contact with his wife, Veronica. (Bayong, Doc. 31, PageID196).

227. Mr. Bayong was convicted of domestic violence. (Bayong, Doc. 31, PageID194-95, 196; *see also* Investigation, Doc. 36-7, PageID759, 762-63).

228. Prior to being incarcerated in the United States, Mr. Bayong worked as "a truck driver" making "deliveries for a company" for "like a couple of months." (Bayong, Doc. 31, PageID173 ("I worked there not too long."); *see also* id. at PageID174).

229. Mr. Bayong does not recall how much he earned while employed as a "truck driver" prior to his incarceration. (Bayong, Doc. 31, PageID173).

230. At the time of his July 18, 2022 deposition, Mr. Bayong was unemployed. (Bayong, Doc. 31, PageID175).

231. Mr. Bayong has not been advised by a medical professional or healthcare provider that he is physically unable to work or that he has any physical limitations for performing work. (Bayong, Doc. 31, PageID176).

232. After his December 9, 2020 release from the Butler County Jail, Mr. Bayong was an inmate in the Franklin County Jail and the Geauga County Jail. (Bayong, Doc. 31, PageID185-87).

233. Mr. Bayong punched another inmate in the Geauga County Jail. (Bayong, Doc. 31, PageID192-93).

234. Plaintiffs' Complaint pleads only claims of excessive force against the individual Defendants and a failure to train and supervise against the County, its Commissioners, and the jail. (Complaint, Doc. 1, PageID8-11; Proposed Amended Complaint, Doc. 28-1, PageID144-47; *see also* Answer to Amended Complaint, Doc. 40, PageID993 at fn1, 1000

25

at ¶45, 1003 at ¶64 and ¶67; MSJ, Doc. 38, PageID948 at fn1; Reply in Support of MSJ, Doc. 68, PageID1792-93).

235.  Plaintiffs' Complaint pleads claims under only the Fifth, Eighth, and Fourteenth Amendments—not the Fourth Amendment. (Complaint, Doc. 1, PageID3, 9-11; Proposed Amended Complaint, Doc. 28-1, PageID139, 144-47; Amended Complaint, Doc. 37, PageID927, 932-35; *see also* Reply in Support of MSJ, Doc. 68, PageID1791).

236.  Plaintiffs' Complaint pleads only a failure to train and supervise theory of *Monell* liability against Defendant Butler County, Ohio. (Complaint, Doc.1, PageID10; Proposed Amended Complaint, Doc. 28-1, PageID146; *see also* Answer to Amended Complaint, Doc. 40, PageID993 at fn1, 1003 at ¶64 at ¶67; Reply in Support of MSJ, Doc. 68, PageID1792-93).

237.  No Corrections Officer "Blankton" or "Bankton" exists at the Butler County Jail. (MSJ, Doc. 38, PageID958-59; Answer, Doc. 8, PageID39 at ¶12, 50 at ¶94; Answer to Amended Complaint, Doc. 40, PageID995 at ¶11, 1007 at ¶93; *see also* Opp. to Plfs' Mtn for Leave, Doc. 66, PageID1681-84).

238.  No Corrections Officer "Phipps" is named as a Defendant in this lawsuit. (Complaint, Doc. 1; Proposed Amended Complaint, Doc. 28-1; Amended Complaint, Doc. 37; *see also* Proposed Second Amended Complaint, Doc. 54-1[1]; Plfs Memo in Opp., Doc. 56, PageID1254, 1256).

239.  Neither Corrections Officer Washburn nor Corrections Officer Phipps is named as a Defendant in this lawsuit. (Complaint, Doc. 1; Proposed Amended Complaint, Doc. 28-1; Amended Complaint, Doc. 37; *see also* Proposed Second Amended Complaint, Doc. 54-1[2]).

240.  Mr. Bayong admits that "a few COs" in the Butler County Jail were "fair" with him. (Bayong, Doc. 31, PageID217).

241.  On June 19, 2020, Mr. Bayong was issued a disciplinary ticket for disrupting medication pass and disobeying direct orders from a corrections officer when Mr. Bayong refused to show Jail Medic New or Corrections Officer Metcalf his mouth to verify he had swallowed all of his medication. (Investigation, Doc. 36-7, PageID746, 787-88, 791; *see also id.* at PageID831).

242.  Mr. Bayong received a hearing over his June 19, 2020 disciplinary ticket, was found guilty, and was issued only a verbal warning. (Investigation, Doc. 36-7, PageID790).

243.  On August 18, 2020, Mr. Adem was issued a disciplinary ticket and, after a hearing, he was found guilty. (Investigation, Doc. 36-7, PageID802).

---

[1] Defendants strongly oppose Plaintiffs' efforts to file a Second Amended Complaint. (Opp. to Plfs' Mtn for Leave, Doc. 66, PageID1680-85).

[2] *See* fn. 1.

244. Corrections officers employed at the Butler County Jail receive a complete copy of the Butler County Sheriff's Office Policies and Procedures that all corrections officers must review and understand. (Fisher, Doc. 36-1, PageID687).

245. Corrections officers employed at the Butler County Jail receive a complete copy of the Butler County Sheriff's Office Corrections Division Post Orders that all corrections officers must review and understand. (Fisher, Doc. 36-1, PageID687).

246. Butler County Sheriff's Office "promulgate[s] and implement[s] policies governing the provision of inmate supervision for people confined to Butler County Jail." (Complaint, Doc. 1, PageID3 at ¶8; Proposed Amended Complaint, Doc. 28-1, PageID139 at ¶7; *see also* Caruso Report, Doc. 38-1, PageID986-87 ("Butler County Jail's policies and procedures meet or exceed national standards…in all areas directly related to this case."); Post Order on ICE Detainees, Doc. 56-8; Post Order on Security, Doc. 56-9).

247. Butler County Sheriff's Office Corrections Division Post Order Number ICE-14 explicitly instructs corrections officers that "[u]se of force against ICE detainees shall be limited to the amount of force necessary to control a given situation." (Post Order on ICE Detainees, Doc. 56-8, PageID1425).

248. Butler County Sheriff's Office Corrections Division Post Order Number ICE-14 explicitly instructs corrections officers that they "shall use as little force as necessary to gain control of the situation." (Post Order on ICE Detainees, Doc. 56-8, PageID1425).

249. Butler County Sheriff's Office Corrections Division Post Order Number ICE-14 explicitly instructs corrections officers that "[i]n no event is force to be used as punishment." (Post Order on ICE Detainees, Doc. 56-8, PageID1425).

250. Butler County Sheriff's Office Corrections Division Post Order Number ICE-14 explicitly instructs corrections officers that "[u]se of force shall be limited to instances of justifiable self-defense, prevention of self-inflicted harm, protection of others, prevention of riot, use of weaponry, escape or other crime, and controlling or subduing a detainee who refuses to obey a staff command." (Post Order on ICE Detainees, Doc. 56-8, PageID1425).

251. Butler County Sheriff's Office Corrections Division Post Order Number ICE-14 explicitly instructs corrections officers, "In instances where the threat is not immediate and/or the detainee is in an isolated location, the officer shall make every effort to resolve the situation without the use of force." (Post Order on ICE Detainees, Doc. 56-8, PageID1425).

252. Under Butler County Sheriff's Office Corrections Division Post Order Number ICE-14, "[m]edical staff shall examine the detainee after any use of force." (Post Order on ICE Detainees, Doc. 56-8, PageID1426).

253. Butler County Sheriff's Office Corrections Division Post Order Number SMO-01 explicitly instructs corrections officers that "[u]se of force shall be limited to the amount of force necessary to control a given situation." (Post Order on Security, Doc. 56-9).

254. Butler County Sheriff's Office Corrections Division Post Order Number SMO-01 explicitly instructs corrections officers that "[i]n no event is physical force used as punishment." (Post Order on Security, Doc. 56-9).

255. Butler County Sheriff's Office Corrections Division Post Order Number SMO-01 explicitly instructs corrections officers, "Use of force shall be limited to instances of justifiable self-defense, prevention of self-inflicted harm, protection of others, prevention of riot, discharge of firearm or other weapon, escape or other crime and controlling or subduing an inmate who refuses to obey a staff command or order." (Post Order on Security, Doc. 56-9).

256. Under Butler County Sheriff's Office Corrections Division Post Order Number SMO-01, "[a]n examination and/or treatment by qualified health care personnel shall be provided to inmates [ ] involved in a use of force incident when there is obvious physical injury or there is complaint of injury or request for medical attention." (Post Order on Security, Doc. 56-9).

257. Corrections officers employed at the Butler County Jail receive monthly training on the jail's post orders. (Fisher, Doc. 36-1, PageID687).

258. Corrections officers employed at the Butler County Jail are required to pass written tests on the content of the jail's post orders. (Fisher, Doc. 36-1, PageID687).

259. Corrections officers employed at the Butler County Jail are required to complete annual training on use of force. (Fisher, Doc. 36-1, PageID687; *see also* Roberts, Doc. 34-1, PageID445; Browning, Doc. 39-1; Caruso Report, Doc. 38-1, PageID987; 2018 DHS Report, Doc. 56-5, PageID1342).

260. The 2018 U.S. Department of Homeland Security ("DHS") audit confirmed that corrections officers at the Butler County Jail receive training on use of force. (2018 DHS Report, Doc. 56-6, PageID1342).

261. The Butler County Sheriff's Office employs a training officer to ensure that all corrections officers employed at the Butler County Jail are up to date on the training requirements. (Fisher, Doc. 36-1, PageID687).

262. All new corrections officers employed at the Butler County Jail are required to complete a Field Training Officer program at the jail to ensure competency as to all requisite jail duties. (Fisher, Doc. 36-1, PageID687; *see also* Roberts, Doc. 34-1, PageID444).

263. The Butler County Sheriff's Office requires all of its corrections officers to complete the Ohio Peace Officer Training Academy ("OPOTA") Basic Corrections Officer Training

within one year of hire at the Butler County Jail. (Fisher, Doc. 36-1, PageID687; *see also* Roberts, Doc. 34-1, PageID444; Browning, Doc. 39-1).

264. The OPOTA Basic Corrections Officer Training addresses subject management and the legal standards regarding use of force. (Browning, Doc. 39-1).

265. The state of Ohio implements annual training requirements for corrections officers to maintain their active certification through OPOTA. Ohio Admin. Code 109:2-9.

266. Any time a corrections officer uses force against an inmate at the Butler County Jail, the corrections officer must submit a written report detailing the circumstances surrounding the use of force. (Complaint, Doc. 1, PageID8 at ¶45; Proposed Amended Complaint, Doc. 28-1, PageID143 at ¶44; Amended Complaint, Doc. 37, PageID931 at ¶44; Post Order on Security, Doc. 56-9*see also* July Force Review, Doc. 36-2; Bayong Oct. Force Review, Doc. 36-4; Adem Oct. Force Review, Doc. 36-5; Incident Report, Doc. 36-3; Investigation, Doc. 36-7, PageID799-800, 808-12, 824-30).

267. Every use of force at the Butler County Jail receives supervisory review. (Post Order on Security, Doc. 56-9; *see also* July Force Review, Doc. 36-2; Bayong Force Review, Doc. 36-4; Adem Force Review, Doc. 36-5).

268. Staffing at the Butler County Jail, in 2020, required that three or more supervisors were on duty at the jail per shift to supervise the corrections officers and assist with the care, custody, and control of inmates. (Fisher, Doc. 36-1, PageID687).

269. Corrections officers employed at the Butler County Jail receive performance evaluations. (Fisher, Doc. 36-1, PageID687).

270. Mr. Bayong does not have any personal knowledge of the training or level of supervision received by corrections officers at the Butler County Jail. (Bayong, Doc. 31, PageID263-64)

271. Mr. Adem does not have any personal knowledge of the training or level of supervision received by corrections officers at the Butler County Jail. (Adem Depo. I, Doc. 32, PageID383).

272. Mauricio Benty was released from the Butler County Jail in July 2019, before Mr. Bayong and Mr. Adem were booked into the Butler County Jail in 2020; therefore, Mr. Benty did not personally observe any force used against Mr. Bayong or Mr. Adem. (Benty, Doc. 43, PageID1036; *see also* Investigation, Doc. 36-7, PageID752-53, 755, 772, 822; Defs' Objections, Doc. 67, PageID1697; Defs' Reply in Support of Objections, Doc. 85, PageID2002).

273. Mauricio Benty did not witness any use of force by Corrections Officers Roberts, Browning, or "Blankton" at the Butler County Jail. (Benty, Doc. 43; *see also* Defs'

Objections, Doc. 67, PageID1697; Defs' Reply in Support of Objections, Doc. 85, PageID2002).

274. Demba Diawara was released from the Butler County Jail in March 2019, before Mr. Bayong and Mr. Adem were booked into the Butler County Jail in 2020; therefore, Mr. Diawara did not personally observe any force used against Mr. Bayong or Mr. Adem. (Corrected Diawara Declaration, Doc. 77-1; *see also* Investigation, Doc. 36-7, PageID752-53, 755, 772, 822; Defs' Objections, Doc. 67, PageID1694, *citing* Diawara Affidavit, Doc. 51-1).

275. Demba Diawara cannot name any specific corrections officer who allegedly used inappropriate force at the Butler County Jail. (Corrected Diawara Declaration, Doc. 77-1; *see also* Defs' Objections, Doc. 67, PageID1694, *citing* Diawara Affidavit, Doc. 51-1).

276. Susan McCampbell does not "hold [her]self out as an expert in the *Bayong* case." (McCampbell Depo. II, Doc. 63, PageID1464).

277. Susan McCampbell did not prepare a written report in this case, *Bayong, et al. v. County of Butler, Ohio, et al.*, Southern District of Ohio Case No. 1:20-cv-989. (McCampbell Depo. II, Doc. 63, PageID1463-66 ("From what I understand, my expert report on the *Benty* case was submitted as part of this lawsuit."), 1467 (Ms. McCampbell was not retained to provide opinions regarding the *Bayong* case)).

278. Susan McCampbell has "no experience working as a correctional officer." (McCampbell Depo. I, Doc. 64, PageID1492).

279. Susan McCampbell has never been personally involved in a use of force against an inmate. (McCampbell Depo. I, Doc. 64, PageID1493).

280. Susan McCampbell has never been to the Butler County Jail. (McCampbell Depo. I, Doc. 64, PageID1489; *see also* id. at PageID1543

281. Lynn Tramonte has never been employed as a corrections officer. (Tramonte Depo., Doc. 65, PageID1608).

282. Lynn Tramonte has never completed a corrections academy. (Tramonte Depo., Doc. 65, PageID1611).

283. Lynn Tramonte's post-secondary education is limited to "a Bachelor of Arts degree in English Writing with a minor in Spanish." (Tramonte Depo., Doc. 65, PageID1611).

284. Lynn Tramonte has never been employed by a correctional facility to develop jail policy. (Tramonte Depo., Doc. 65, PageID1609).

285. Lynn Tramonte has never been hired by the Ohio Department of Rehabilitation and Correction, a federal court, or a federal government agency to conduct an inspection of a detention facility. (Tramonte Depo., Doc. 65, PageID1619-20).

286. Lynn Tramonte is not familiar with the Ohio Peace Officer Training Academy ("OPOTA") requirements, which are applicable to certified corrections officers in the state of Ohio. (Tramonte Depo., Doc. 65, PageID1610).

287. Lynn Tramonte was involved in the creation of a December 14, 2020 letter sent to Abdirizak Farah, Senior Policy Advisor for the U.S. Department of Homeland Security's Office for Civil Rights and Civil Liberties, which requested, in part, an investigation into the alleged human and civil rights violations experienced by ICE detainees at the Butler County Jail; however, the letter's requests were not fulfilled by the federal government. (Tramonte Depo., Doc. 65, PageID1621-24, 1632-33 (Mr. Farah advised "his office can no longer follow up on the report or provide the information requested"); *see also* Tramonte "Report", Doc. 53-2).

288. Lynn Tramonte had not been retained to serve as an expert witness at the time she was involved in the creation of the December 14, 2020 letter sent to Abdirizak Farah, Senior Policy Advisor for the U.S. Department of Homeland Security's Office for Civil Rights and Civil Liberties, that Ms. Tramonte submits as her expert report in this case. (Tramonte Depo., Doc. 65, PageID1633-34; *see also* id. at PageID1634-38).

289. The December 14, 2020 letter sent to Abdirizak Farah, Senior Policy Advisor for the U.S. Department of Homeland Security's Office for Civil Rights and Civil Liberties, that Lynn Tramonte submits as her expert report in this case does not address the Butler County Sheriff's Office's training of its corrections officers. (Tramonte Depo., Doc. 65, PageID1640-41).

290. Mr. Adem's mother submitted complaints over Mr. Adem's treatment at the Butler County Jail to ICE, but ICE took no action. (Adem Depo. II, Doc. 33, PageID403-04; *see also* Adem Depo. I, Doc. 32, PageID381; Adem Corrected Declaration, Doc. 86-1, PageID2014).

291. Lynn Tramonte has not personally seen Mr. Bayong or Mr. Adem. (Tramonte Depo., Doc. 65, PageID1628-30).

292. Lynn Tramonte has not reviewed the Butler County Jail file for Mr. Bayong. (Tramonte Depo., Doc. 65, PageID1639).

293. Lynn Tramonte has not reviewed the Butler County Jail file for Mr. Adem. (Tramonte Depo., Doc. 65, PageID1639).

294. Mory Keita did not personally see any use of force by a corrections officer against Mr. Bayong on October 20, 2020. (Keita Corrected Declaration, Doc. 73-1 ("I couldn't see what

was happening"); *see also* Defs' Objections, Doc. 67, PageID1695, *citing* Keita Affidavit, Doc. 45-1).

295. Mory Keita did not personally see any use of force by a corrections officer against Mr. Adem on October 20, 2020. (Keita Corrected Declaration, Doc. 73-1 ("I couldn't see what was happening"); *see also* Defs' Objections, Doc. 67, PageID1695, *citing* Keita Affidavit, Doc. 45-1).

296. Mory Keita cannot name any specific corrections officer who allegedly used force against Mr. Bayong in August 2020. (Keita Corrected Declaration, Doc. 73-1 ("about four or five CO's went to the cell of Bayong Brown"); *see also* Defs' Objections, Doc. 67, PageID1695, *citing* Keita Affidavit, Doc. 45-1).

297. Mantas Petrauskas cannot name any specific corrections officer who allegedly used force against Mr. Bayong on August 17, 2020. (Petrauskas Corrected Declaration, Doc. 88-1; *see also* Petrauskas Declaration, Doc. 83-1; Defs' Objections, Doc. 67, PageID1695-96, *citing* Petrauskas Affidavit, Doc. 58-1).

298. Mantas Petrauskas did not personally see any use of force by a corrections officer against Mr. Bayong or Mr. Adem inside cell C-20 on October 20, 2020. (Petrauskas Corrected Declaration, Doc. 88-1; *see also* Petrauskas Declaration, Doc. 83-1; Defs' Objections, Doc. 67, PageID1696, *citing* Petrauskas Affidavit, Doc. 58-1).

299. Mantas Petrauskas cannot name any specific corrections officer who entered cell C-20 on October 20, 2020, but Mr. Petrauskas identifies Corrections Officer Browning, who Mr. Bayong and Mr. Adem admit was not present during the October 20, 2020 use of force. (Petrauskas Corrected Declaration, Doc. 88-1; Petrauskas Declaration, Doc. 83-1; Bayong, Doc. 31, PageID230; Adem Depo. I, Doc. 32, PageID364; Plfs' Motion for Leave, Doc. 28, PageID134-35 ("L. Browning was not one of the correctional officers involved in the October 20, 2020 incident."); *see also* Defs' Objections, Doc. 67, PageID1696, *citing* Petrauskas Affidavit, Doc. 58-1).

300. Daanish Pestonjee cannot name any specific corrections officer who allegedly used force against Mr. Bayong on August 17, 2020. (Pestonjee Corrected Declaration, Doc. 82-1; *see also* Defs' Objections, Doc. 67, PageID1696, *citing* Pestonjee Affidavit, Doc. 59-1).

301. Daanish Pestonjee did not personally observe any force used by a corrections officer against Mr. Adem at the Butler County Jail. (Pestonjee Corrected Declaration, Doc. 82-1; *see also* Defs' Objections, Doc. 67, PageID1688, 1696, *citing* Pestonjee Affidavit, Doc. 59-1).

302. Renay Jones did not personally observe any force used by a corrections officer against Mr. Bayong at the Butler County Jail. (Jones Corrected Declaration, Doc. 81-1; *see also* Defs' Objections, Doc. 67, PageID1694, *citing* Jones Affidavit, Doc. 50-1 and 61-1).

303. Renay Jones did not personally observe any force used by a corrections officer against Mr. Adem at the Butler County Jail. (Jones Corrected Declaration, Doc. 81-1; *see also* Defs' Objections, Doc. 67, PageID1694, *citing* Jones Affidavit, Doc. 50-1 and 61-1).

304. Renay Jones cannot name any specific corrections officer who allegedly used inappropriate force at the Butler County Jail. (Jones Corrected Declaration, Doc. 81-1; *see also* Defs' Objections, Doc. 67, PageID1694, *citing* Jones Affidavit, Doc. 50-1 and 61-1).

305. Ranoldo Balfour did not personally observe any force used by a corrections officer against Mr. Bayong at the Butler County Jail. (Balfour Corrected Declaration, Doc. 80-1; *see also* Defs' Objections, Doc. 67, PageID1694, *citing* Balfour Affidavit, Doc. 49-1).

306. Ranoldo Balfour did not personally observe any force used by a corrections officer against Mr. Adem at the Butler County Jail. (Balfour Corrected Declaration, Doc. 80-1; *see also* Defs' Objections, Doc. 67, PageID1694, *citing* Balfour Affidavit, Doc. 49-1).

307. Ranoldo Balfour cannot name any specific corrections officer who allegedly used inappropriate force at the Butler County Jail. (Balfour Corrected Declaration, Doc. 80-1; *see also* Defs' Objections, Doc. 67, PageID1694, *citing* Balfour Affidavit, Doc. 49-1).

308. Marcos Antonio Sanchez Hernandez did not personally observe any force used by a corrections officer against Mr. Bayong at the Butler County Jail. (Hernandez Letter, Doc. 55-1; *see also* Defs' Objections, Doc. 67, PageID1688, 1694).

309. Marcos Antonio Sanchez Hernandez did not personally observe any force used by a corrections officer against Mr. Adem at the Butler County Jail. (Hernandez Letter, Doc. 55-1; *see also* Defs' Objections, Doc. 67, PageID1688, 1694).

310. Marcos Antonio Sanchez Hernandez cannot name any specific corrections officer who allegedly used inappropriate force at the Butler County Jail. (Hernandez Letter, Doc. 55-1; *see also* Defs' Objections, Doc. 67, PageID1688, 1694).

311. Zachary Sanders did not personally observe any force used by a corrections officer against Mr. Bayong at the Butler County Jail. (Sanders Affidavit, Doc. 44-1; *see also* Defs' Objections, Doc. 67, PageID1689-90; Defs' Reply in Support of Objections, Doc. 85, PageID1999).

312. Zachary Sanders did not personally observe any force used by a corrections officer against Mr. Adem at the Butler County Jail. (Sanders Affidavit, Doc. 44-1; *see also* Defs' Objections, Doc. 67, PageID1689-90; Defs' Reply in Support of Objections, Doc. 85, PageID1999).

313. Zachary Sanders did not personally observe a corrections officer use inappropriate force at the Butler County Jail. (Sanders Affidavit, Doc. 44-1; *see also* Defs' Objections, Doc. 67, PageID1689-90; Defs' Reply in Support of Objections, Doc. 85, PageID1999).

33

314. Plaintiffs did not disclose Demba Diawara or Marcos Antonio Sanchez Hernandez before filing the witnesses' purported affidavits in opposition to Defendants' Motion for Summary Judgment. (Defs' Objections, Doc. 67, PageID1691-93; Plfs' Disclosures, Doc. 67-1; Plfs' Witness List, Doc. 67-2; Bayong Responses, Doc. 67-3, PageID1727; Adem Responses, Doc. 67-4, PageID1749; Bayong Amended Responses, Doc. 67-5; Adem Amended Responses, Doc. 67-6; Plfs' Opp. to Defs' Objections, Doc. 84, PageID1952-53, 1955-56, 1963 (arguing only that Plaintiffs' failures to disclose are harmless); *see also* Defs' Reply in Support of Objections, Doc. 85, PageID1993-94, 1996; Plfs' Reply on Requested Extension, Doc. 72, PageID1850 (arguing only no prejudice suffered from Plaintiffs' failure to disclose)).

315. Plaintiffs did not disclose the U.S. Department of Homeland Security ("DHS") reports that Plaintiffs filed in opposition to Defendants' Motion for Summary Judgment before Plaintiffs' May 15, 2023 filing of the reports. (Defs' Objections, Doc. 67, PageID1698; *see also* 2015 DHS Report, Doc. 56-4; 2018 DHS Report, Doc. 56-5; Plfs' Disclosures, Doc. 67-1; Bayong Responses, Doc. 67-3, PageID1731; Adem Responses, Doc. 67-4, PageID1753; Bayong Amended Responses, Doc. 67-5; Adem Amended Responses, Doc. 67-6; Plfs' Opp. to Defs' Objections, Doc. 84, PageID1957; Defs' Reply in Support of Objections, Doc. 85, PageID1997).

316. The 2018 DHS audit confirms Butler County Jail staff received training "in report writing, response to resistance, defensive tactics, and interpersonal communication[.]" (Plfs' Opp. to MSJ, Doc. 56, PageID1286, *citing* 2018 DHS Report, Doc. 56-6, PageID1342).

317. The 2018 DHS audit confirms the Butler County Jail's policies comply with the ICE national detention standards on use of force. (2018 DHS Report, Doc. 56-5, PageID1341; *see also* Plfs' Opp. to MSJ, Doc. 56, PageID1285, citing 2018 DHS Report, Doc. 56-5, PageID1341).

318. Plaintiffs did not disclose the joint letter dated September 16, 2020 that Plaintiffs filed in opposition to Defendants' Motion for Summary Judgment before Plaintiffs' May 15, 2023 filing of the joint letter. (Defs' Objections, Doc. 67, PageID1698; *see also* Joint Letter, Doc. 56-10; Plfs' Disclosures, Doc. 67-1; Bayong Responses, Doc. 67-3, PageID1731; Adem Responses, Doc. 67-4, PageID1753; Bayong Amended Responses, Doc. 67-5; Adem Amended Responses, Doc. 67-6).

319. Plaintiffs did not disclose any contact information for Renay Jones, and Plaintiffs claimed they do not have Mr. Jones's address despite filing written, signed statements by Mr. Jones. (Jones Affidavit, Doc. 50-1 and Doc. 61-1; Jones Corrected Declaration, Doc. 81-1; Plfs' Opp. to Defs' Objections, Doc. 84, PageID1956; *see also* Defs' Objections, Doc. 67, PageID1693; Plfs' Disclosures, Doc. 67-1; Plfs' Witness List, Doc. 67-2; Bayong Responses, Doc. 67-3, PageID1727; Adem Responses, Doc. 67-4, PageID1749; Bayong Amended Responses, Doc. 67-5; Adem Amended Responses, Doc. 67-6; Defs' Reply in Support of MSJ, Doc. 68, PageID1816).

320. Plaintiffs did not disclose any contact information for Ranoldo Balfour, and Plaintiffs claimed they do not have Mr. Balfour's address despite filing written, signed statements by Mr. Balfour. (Balfour Affidavit, Doc. 49-1; Balfour Corrected Declaration, Doc. 80-1; Plfs' Opp. to Defs' Objections, Doc. 84, PageID1956; *see also* Defs' Objections, Doc. 67, PageID1693; Plfs' Disclosures, Doc. 67-1; Plfs' Witness List, Doc. 67-2; Bayong Responses, Doc. 67-3, PageID1727; Adem Responses, Doc. 67-4, PageID1749; Bayong Amended Responses, Doc. 67-5; Adem Amended Responses, Doc. 67-6; Defs' Reply in Support of MSJ, Doc. 68, PageID1816 ).

Respectfully submitted,

/s/ Angelica M. Jarmusz
Angelica M. Jarmusz (0092249)
Daniel T. Downey (0063753)
**FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLC**
7775 Walton Parkway, Suite 200
New Albany, Ohio 43054
(614) 221-1216 - Telephone
(614) 221-8769 - Facsimile
ddowney@fisheldowney.com
ajarmusz@fisheldowney.com
*Attorneys for Defendants County of Butler, Ohio,*
*the Butler County Board of Commissioners, Butler*
*County Jail, Corrections Officers A. Roberts, L.*
*Browning, and Blankton*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing ***Defendants' Proposed Undisputed Facts*** was served, via the Court's CM/ECF system, upon all counsel this 12th day of September 2024.

/s/ Angelica M. Jarmusz
Angelica M. Jarmusz (0092249)
**FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLC**
*Attorney for Defendants County of Butler, Ohio, the*
*Butler County Board of Commissioners, Butler*
*County Jail, Corrections Officers A. Roberts, L.*
*Browning, and Blankton*