## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **BAYONG BROWN BAYONG AND AHMED ADEM**<br>          Plaintiff,<br><br>v.<br><br>**COUNTY OF BUTLER, OHIO, ET AL.**<br>          Defendant | Case No.: 1:20-cv-00989<br><br><br>**Judge Jeffery P. Hopkins**<br>**Magistrate Judge Stephanie K. Bowman** |

## RESPONSE TO PROPOSED UNDISPUTED FACTS

COME NOW Plaintiffs, Bayong Brown Bayong and Ahmed Adem, through undersigned counsel, and respectfully respond to Defendant's Proposed Undisputed Facts.

1.      Plaintiffs admit the facts in Paragraph 1.

2.      Plaintiffs admit the facts in Paragraph 2.

3.      Plaintiffs admit the facts in Paragraph 3.

4.      Plaintiffs admit the facts in Paragraph 4.

5.      Plaintiffs admit the facts in Paragraph 5.

6.      Plaintiffs admit the facts in Paragraph 6.

7.      Plaintiffs admit the facts in Paragraph 7.

8.      Plaintiffs admit the facts in Paragraph 8.

9.      Plaintiffs admit the facts in Paragraph 9.

10.     Plaintiffs admit the facts in Paragraph 10.

11.     Plaintiffs admit the facts in Paragraph 11.

12.      Plaintiffs deny Paragraph 12. Plaintiff Adem was not demanding to be fed. Plaintiff

Adem had asked the officers at the ICE HQ processing center before Butler County

about being fed since he had not eaten all day, to which he was informed that he

would be fed when he arrived at the Butler County Detention Center. (Corrected

Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

13.      Plaintiffs admit to the fact in Paragraph 13.

14.      Plaintiffs do not have enough information to deny or admit the allegations in

Paragraph 14.

15.      Plaintiffs deny Paragraph 15. Plaintiff Adem was not demanding to be fed. Plaintiff

Adem had asked the officers at the ICE HQ processing center before Butler County

about being fed since he had not eaten all day, to which he was informed that he

would be fed when he arrived at the Butler County Detention Center. Plaintiff

explained to the Correction Officers Washburn and CO Phipps that he was starving

and so were the other detainees he was with. The other detainees did not speak much

English, so Plaintiff Adem felt like he had to speak up for the group. (Corrected

Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

16.      Plaintiffs deny Paragraph 16. Plaintiff Adem was not demanding to be fed outside of

the jail's scheduled meal passes. In response to being told that Plaintiff Adem was

starving and had not eaten all day, CO Washburn and CO Phipps replied "We feed

you when we want to." The COs further stated that there was no talking about food.

(Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

17.       Plaintiffs deny Paragraph 17. Plaintiff Adem was not demanding to be fed outside of
          the jail's scheduled meal passes. (Corrected Declaration of Ahmed Adem, Doc. 86-1,
          PageID2012).

18.       Plaintiffs deny Paragraph 18. Plaintiff Adem was not cursing at corrections officers.
          Plaintiff Adem kept explaining that he was starving, along with the other detainees in
          his group. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

19.       Plaintiffs deny Paragraph 19. Plaintiff Adem did not scream profanities at corrections
          officers. Plaintiff Adem kept explaining that he was starving, along with the other
          detainees in his group. (Corrected Declaration of Ahmed Adem, Doc. 86-1,
          PageID2012).

20.       Plaintiffs deny Paragraphs 20. Plaintiff Adem denies that he was taken to the shower
          room for the purpose of continuing the booking. The shower [change] room contained
          no cameras. Correctional officers put on rubber gloves and upon arriving at the
          shower room, began to beat Plaintiff Adem. (Corrected Declaration of Ahmed Adem,
          Doc. 86-1, PageID2012). It was only after Plaintiff Adem was punched in the face,
          neck, and back, kicked on the ground, and had CO Phipps place his knee on Plaintiff
          Adem's neck, that the correctional officers performed the body cavity search and
          dressed Plaintiff Adem. (Corrected Declaration of Ahmed Adem, Doc. 86-1,
          PageID2012-2013).

21.       Plaintiffs deny Paragraphs 21. Plaintiff Adem denies the allegation that he was a
          disruptive, aggressive, and/or noncompliant detainee. During the beating, the
          correctional officers had pointed a taser at Plaintiff Adem so that he could only lay
          there and take the beating. Plaintiff Adem had no chance to move because he was so

3

afraid the correctional officers would kill him. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

22.     Plaintiffs deny Paragraph 22. Plaintiff Adem denies the allegation that he was a disruptive, aggressive, and/or noncompliant detainee. Plaintiff Adem had no chance to move because he was so afraid the correctional officers would kill him. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

23.     Plaintiffs admit to the fact in Paragraph 23.

24.     Plaintiffs admit the facts in Paragraph 24.

25.     Plaintiffs deny Paragraph 25. During the assault against Plaintiff Adem, a third correctional officer, who Plaintiff Adem believes was a sergeant, came in and pointed a taser at him. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012-2013).

26.     Plaintiffs admit the facts in Paragraph 26.

27.     Plaintiffs deny the allegations in Paragraph 27 to the extent that a nurse came to evaluate Plaintiff Adem only through a glass window and after a look-over, stated that Plaintiff Adem was good and refused to examine or take photographs of his injuries. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

28.     Plaintiffs deny Paragraph 28. Plaintiff Adem denies the allegation that he refused a full evaluation during a medical professional evaluation of him following the July 21, 2020 beating. Plaintiff Adem asked the nurse to take photos of his injuries, to which she refused and stated that Plaintiff Adem was good. The nurse also did not give Plaintiff Adem any bandages or examine his injuries. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

29.     Plaintiffs admit to Paragraphs 29

30.     Plaintiffs admit to Paragraph 30.

31.     Plaintiffs admit to Paragraph 31.

32.     Plaintiffs admit to Paragraph 32.

33.     Plaintiffs deny the allegations in Paragraph 33 that Plaintiff Adem did not raise the
        July 21, 2020 use of force incident with the mental health professional, Ms. Cecilia
        White. Defendant claims that Plaintiff Adem testified at his deposition that he did not
        tell Ms. White of the use of force incident; on the contrary, Plaintiff Adem testified at
        his deposition that he did not need to tell Ms. White, because "she was there and saw
        it happen." Plaintiff further states, "She's the lady that I called for help so she already
        knew. And she's the one, she is the one I kept telling." (Adem Depo. I, Doc. 32,
        PageID345).

34.     Plaintiff denies the allegations in Paragraph 34 to the extent that Plaintiff Adem only
        states that the reason he did not need to meet with a psychiatrist or require further
        mental health attention was because he was not suicidal and was not thinking of
        killing himself. (Adem Depo. I, Doc. 32, PageID346).

35.     Plaintiff denies the allegations in Paragraph 35 to the extent that Plaintiff Adem only
        states that the reason he did not need to meet with a psychiatrist or require further
        mental health attention was because he was not suicidal and was not thinking of
        killing himself. (Adem Depo. I, Doc. 32, PageID346).

36.     Plaintiffs admit to the fact in Paragraph 36.

37.     Plaintiffs deny Defendant's allegation in Paragraph 37. On October 20th, 2020
        Plaintiff Adem's mother called ICE in Washington D.C. In order to make a complaint

regarding corrections officers' misconduct at Butler County. Butler County Sheriff's Office responded to this allegation of correction officer misconduct by retaliating against Plaintiff Adem by giving him a ticket for "threats to personnel" and taking away his commissary access. Further, Butler County Jail's medical evaluations of the detainees did not contain a medical assessment of detainees after the force was used. Finally, Butler County Jail does not have automatic recording video technology, no body-worn cameras, nor were handheld cameras routinely used to record incidents or any planned uses of force. The lack of video capabilities undermines Butler County Jail's ability to evaluate the use of force against inmates. (2018 DHS Report; Doc. 56-6, Page1D1342; Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2017; McCampbell Expert Report; Doc. 56-7[1], Page 9).

38.      Plaintiffs admit the facts in Paragraph 38, except Plaintiff denies the use of force was "again" investigated; this was a first investigation.

39.      Plaintiffs admit the facts in Paragraph 39.

40.      Plaintiffs admit the facts in Paragraph 40.

41.      Plaintiffs admit the facts in Paragraph 41.

42.      Plaintiffs admit the facts in Paragraph 42.

43.      Plaintiffs admit the facts in Paragraph 43.

44.      Plaintiffs admit the facts in Paragraph 44.

45.      Plaintiffs admit the facts in Paragraph 45.

46.      Plaintiffs admit the facts in Paragraph 46.

---

[1] Exhibit to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. 56) have not been generated PageID, therefore all citations made to Plaintiff's Opposition to Defendant's Motion for Summary Judgment Exhibits will be referenced using the document's internal numbering.

47.     Plaintiffs deny the facts in Paragraph 47 to the extent that Butler County Jail protocols do not specify that inmates were required to wear a mask over both their nose and mouth. (Fisher, Doc. 36-1, PageID686).

48.     Plaintiffs deny the allegations in Paragraph 48 to the extent that Plaintiff Bayong was only advised that he needed to wear a mask and not how to wear them properly. Plaintiff Bayong had his mask below his nose because he had just come from the gym and he could not breath. (Bayong Depo., Doc. 31, PageID200-201).

49.     Plaintiffs admit the fact in Paragraph 49.

50.     Plaintiffs admit the fact in Paragraph 50.

51.     Plaintiffs admit the fact in Paragraph 51.

52.     Plaintiffs deny the allegations in Paragraph 52. Plaintiff Bayong was told by CO Browning that he was being moved to isolation and that he needed to pack his things. Plaintiff did not resist. Plaintiff Bayong complied and began to pack his things. He stated to the CO's, "I am having a problem with my leg.  Let me go quietly.  Let me just get my things quietly and leave." Plaintiff Bayong states that although he was being compliant, the COs became verbally abusive and started to physically beat and push Plaintiff Bayong around, demanding that he "hurry up." (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022; Bayong Depo., Doc. 31, PageID200-201).

53.     Plaintiffs admit to the facts in Paragraph 53.

54.     Plaintiffs deny the allegations in Paragraph 54. The use of force against Plaintiff Bayong was not a formal escort position; while Plaintiff Bayong was packing up his stuff so he could be transferred, the correctional officers started beating him with their

fists and hands and pushing him; they then pulled him and pushed him out of C-Pod; CO Phipps then gave him a strong push from behind, causing him to fall head first down a metal staircase; correctional officers then dragged him to isolation. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022-2023).

55. Plaintiffs admit to the facts in Paragraph 55.

56. Plaintiff deny the allegations in Paragraph 56 to the extent that Plaintiff Bayong identified Officer Browning as present during the August 17, 2020 use of force incident and later identified Officer Phipps as the officer who had pushed him. Plaintiff cannot identify each CO who used force on him on August 17, 2020 due to being punched by multiple COs and COs typically do not wear identification at Butler County Jail. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022; Bayong Depo., Doc. 31, PageID201).

57. Plaintiff deny the allegations in Paragraph 57 to the extent that Plaintiff Bayong stated that around four officers came into his cell on August 17, 2020. (Bayong Depo., Doc. 31, PageID201).

58. Plaintiff deny the allegations in Paragraph 58 to the extent that Plaintiff Bayong stated that he was beaten and punched all over his body, inside his C-Pod cell on August 17, 2020. (Bayong Depo., Doc. 31, PageID204).

59. Plaintiff admits to the fact in Paragraph 59.

60. Plaintiff deny the allegations in Paragraph 60 as Plaintiff Bayong states he was pushed down the stairs by CO Phipps. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023 ( "The description of the CO that pushed me is that

of CO Phipps and if he is presented in front of me or the other witnesses to that incident, they will be able to identify him")).

61.    Plaintiff deny the allegations in Paragraph 61. Plaintiff Bayong stated that there were 15 stairs and "I was pushed when I was on the 6th stair from the bottom." (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2023).

62.    Plaintiffs deny the allegations in Paragraph 62. Plaintiff Bayong stated that he landed "head first on the concrete about 2 feet at the base of the stairs." (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2023;  Bayong Depo., Doc. 31, PageID206).

63.    Plaintiffs deny the allegations in Paragraph 63. Plaintiff Bayong stated that the correctional officers used abusive language toward him on August 17, 2020. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2022-2023). Plaintiff Bayong also stated that the CO's use racist language "a lot over there," and that Plaintiff could not, "remember a specific day.  Because it's something they used all the time at that jail." (Bayong Depo., Doc 31., PageID210).

64.    Plaintiffs admit the allegations in Paragraph 64.

65.    Plaintiffs deny the allegations in Paragraph 65 to the extent that Plaintiff Bayong states that he does not recall if Officer Browning or any specific officer participated in the assault because he was being punched by multiple people and being hit all over his body. (Bayong Depo., Doc. 31, PageID202).

66.    Plaintiffs deny the allegations in Paragraph 66 to the extent that Plaintiff Bayong states that he does not recall if Officer Browning or any specific officer participated

in the assault because he was being punched by multiple people and being hit all over his body. (Bayong Depo., Doc. 31, PageID202).

67.     Plaintiffs admit to the facts listed in Paragraph 67.

68.     Plaintiffs admit to the statements in Paragraph 68.

69.     Plaintiffs deny the allegations in Paragraph 69. The use of force against Plaintiff Bayong was not a formal escort position; while Plaintiff Bayong was packing up his stuff so he could be transferred, the correctional officers started beating him with their fists and hands and pushing him; they then pulled him and pushed him out of C-Pod; CO Phipps then gave him a strong push from behind, causing him to fall head first down a metal staircase; correctional officers then dragged him to isolation. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022-2023).

70.     Plaintiff admits to the facts in Paragraph 70, although notes that he held onto the railings *until* he was pushed strongly from behind and fell down the rest of the metal staircase. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2023).

71.     Plaintiffs deny the allegations in Paragraph 71. Plaintiff Bayong has repeatedly stated that "he felt a strong push from behind." Another inmate, Mr. Petrauskas observed the correction officer behind Mr. Bayong push him and observed Mr. Bayong fall down the stairs. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2023; Corrected Declaration of Mantas Petrauskas, Doc. 88-1, PageID2029). This casts into doubt that Corrections Officer Green could really have perceived this scene as he has since claimed he did.

72.     Regarding Paragraph 72, Plaintiffs admit that a nurse came to see Plaintiff Bayong in F-Pod, but denies that she conducted a medical evaluation of him. Plaintiff Bayong

states that the nurse was verbally abusive, yelled at him, accused him of faking injuries, and refused to treat his injuries, give him bandages, or take him to a doctor. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2023).

73. Plaintiffs deny the allegations in Paragraph 73. Plaintiff Bayong was not unwilling to engage in a conversation about his health, but rather his concerns were ignored. When Plaintiff Bayong was being evaluated for injuries, the nurse was verbally abusive, yelling, and aggressive toward Plaintiff Bayong. The nurse accused Plaintiff Bayong of pretending to have a problem with his legs, to which Plaintiff Bayong stated, "If you do not want to talk to me or hear my own story, then I won't allow you to attend to me." (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2023; Bayong Depo., Doc. 31, PageID215).

74. Plaintiffs admit to the statements in Paragraph 74.

75. Plaintiffs deny the allegations in Paragraph 75 to the extent that his injuries to his head and neck were ignored, not truly evaluated, and left untreated by the medical professional who evaluated him. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2023).

76. Plaintiffs deny the allegations in paragraph 76 to the extent that it implies that Mr. Bayong does not have health conditions with his legs, which is disputed based on Plaintiff's testimony that he has swelling in his legs due to high blood pressure and received medication for the same. (Bayong Depo., Doc. 31, PageID265).

77. Plaintiffs deny the allegations in Paragraph 77 to the extent that Plaintiff states that he did not think he was inconsistent with his medication, except on days when the

medication was provided to him later or earlier. (Bayong Depo., Doc. 31, PageID214).

78.     Plaintiffs admit to the facts in Paragraph 78.

79.     Plaintiffs deny the allegations in Paragraph 79 to the extent that Plaintiff Adem stated that he did not know if he observed any injuries to Plaintiff Bayong's legs. (Adem Depo., Doc. 32, PageID351-352).

80.     Plaintiffs deny the allegations in Paragraph 80 to the extent that Plaintiff Adem stated that he did not know if he observed Plaintiff Bayong experience any difficulty walking. (Adem Depo., Doc. 32, PageID351-352).

81.     Plaintiffs admit to the facts in Paragraph 81.

82.     Plaintiffs admit to the facts in Paragraph 82.

83.     Plaintiffs admit to the facts in Paragraph 83.

84.     Plaintiffs admit to the facts in Paragraph 84.

85.     Plaintiffs admit to the facts in Paragraph 85.

86.     Plaintiffs admit to the facts in Paragraph 86.

87.     Plaintiffs deny the allegations in Paragraph 87 to the extent that after Plaintiff Bayong's temperature was taken, he was not informed that the temperature was high nor was he told that he may have COVID. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2024; Bayong Depo., Doc. 31, PageID222).

88.     Plaintiffs admit to the facts in Paragraph 88.

89.     Plaintiffs admit to the facts in Paragraph 89.

90.     Plaintiffs admit to the facts in Paragraph 90.

91.     Plaintiffs admit to the facts in Paragraph 91.

92.      Plaintiffs admit to the facts in Paragraph 92.

93.      Plaintiffs deny the allegations in Paragraph 93 to the extent that Plaintiffs Bayong and Adem tried to ask clarifying questions to understand the situation, not as an attempt to not comply. Plaintiff Bayong stated, "It's not like -- it's not like I did not agree.  We were merely asking to talk to the supervisor to understand something.  But, see, in Butler County, they say we don't have rights.  You know, that's what always happens.  You know, you don't have a say in anything. If you ask something, they will come and beat you up. So that was actually what happened." (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2024; Bayong Depo., Doc. 31, PageID222-223; Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

94.      Plaintiffs deny the allegations in Paragraph 94. Plaintiffs Bayong and Adem tried to ask clarifying questions to understand the situation, not as an attempt to not comply. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2024; Bayong Depo., Doc. 31, PageID222-223; Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

95.      Plaintiffs deny the allegations in Paragraph 95. Plaintiffs Bayong and Adem tried to ask clarifying questions to understand the situation, not as an attempt to not comply. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2024; Bayong Depo., Doc. 31, PageID222-223; Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

96.      Plaintiffs deny the allegations in Paragraph 96 to the extent that Plaintiff Adem was not questioning the orders of the corrections officers, but was trying to understand why he also had to move. (Adem Depo., Doc. 32, PageID353).

97.     Plaintiffs admit to the facts in Paragraph 97.

98.     Plaintiffs admit to the facts in Paragraph 98.

99.     Plaintiffs deny the facts in Paragraph 99. Plaintiffs were interior to the cell and the correctional officers entered the door of the cell. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015; Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2024).

100.    Plaintiffs admit to the facts in Paragraph 100, but notes at this point five to six correctional officers showed up, arranged themselves in a manner that blocked the view of door, and started yelling "pack your shit up right now". (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2024).

101.    Plaintiffs admit to the facts in Paragraph 101.

102.    Plaintiffs deny the allegations in Paragraph 102 to the extent that Plaintiff Adem was not questioning the orders of the corrections officers, but was trying to understand more about the situation. (Adem Depo, Doc. 32, PageID353).

103.    Plaintiffs deny the allegations in Paragraph 103. Asking clarifying questions from the corrections officers is not considered an act of disobedience or noncompliance. Use of force is limited to controlling or subduing an inmate who refuses to obey a staff command or order, most importantly in instances where the threat is not immediate and/or the detainee is in an isolated location, the officer shall make every effort to resolve the situation without the use of force." (Adem Depo, Doc. 32, PageID353; McCampbell Expert Report; Doc. 56-7, Page 34).

104.    Plaintiffs deny the allegations in Paragraph 104. Asking clarifying questions from the corrections officers is not considered an act of disobedience or noncompliance. Use of

force is limited to controlling or subduing an inmate who refuses to obey a staff

command or order, most importantly in instances where the threat is not immediate

and/or the detainee is in an isolated location, the officer shall make every effort to

resolve the situation without the use of force." (Adem Depo, Doc. 32, PageID353;

McCampbell Expert Report; Doc. 56-7, Page 34).

105.　　Plaintiffs admit to the statements in Paragraph 105.

106.　　Plaintiffs deny the allegations in Paragraph 106 to the extent that Plaintiffs were

already packing their belongings for transfer. Plaintiff Bayong states, "within minutes

when we were packing, they already had one person on the floor. We already had one

person on the floor." (Bayong Depo., Doc. 31, PageID223). The correctional officers

were already in the room, and Correctional Officers Roberts and Blanton proceeded

to participate in beatings of Plaintiff Bayong and Adem. (Corrected Declaration of

Ahmed Adem, Doc. 86-1, PageID2015; Corrected Declaration of Bayong Brown

Bayong, Doc. 87-1, PageID2024).

107.　　Plaintiffs deny the allegations in Paragraph 107, as all of the correctional officers

were yelling at both Plaintiff Bayong and Adem. Corrections Officer Roberts did beat

Mr. Bayong while Corrections Officer Blanton beat Mr. Adem. (Corrected

Declaration of Ahmed Adem, Doc. 86-1, PageID2015; Corrected Declaration of

Bayong Brown Bayong, Doc. 87-1, PageID2024).

108.　　Plaintiffs admit to the facts in Paragraph 108.

109.　　Plaintiffs admit to the facts in Paragraph 109.

110.　　Plaintiffs admit to the facts in Paragraph 110.

111.     Plaintiffs deny the allegations in Paragraph 111. Plaintiffs Bayong and Adem were
         interior to the cell already and did not make any movement towards the COs. They
         were not ordered to backup. As Plaintiff Bayong was sitting on his bed, he was
         sucker-punched by a CO, thrown to the floor, handcuffed, and then beaten.  (Bayong
         Depo., Doc. 31, PageID227-228). Corrected Declaration of Bayong Brown Bayong;
         Doc. 87-1, PageID2024; Corrected Declaration of Ahmed Adem, Doc. 86-1,
         PageID2015).

112.     Plaintiffs deny the allegations in Paragraph 112. Plaintiff Bayong did not make any
         such movement towards the COs. As Plaintiff Bayong was sitting on his bed, he was
         sucker-punched by a CO, thrown to the floor, handcuffed, and then beaten.  (Bayong
         Depo., Doc. 31, PageID227-228; Corrected Declaration of Bayong Brown Bayong;
         Doc. 87-1, PageID2024; Corrected Declaration of Ahmed Adem, Doc. 86-1,
         PageID2015).

113.     Plaintiffs deny the allegations in Paragraph 113. Plaintiff Bayong did not make any
         such movement towards the COs. As Plaintiff Bayong was sitting on his bed, he was
         sucker-punched by a CO, thrown to the floor, handcuffed, and then beaten.  (Bayong
         Depo., Doc. 31, PageID227-228;  Corrected Declaration of Bayong Brown Bayong;
         Doc. 87-1, PageID2024; Corrected Declaration of Ahmed Adem, Doc. 86-1,
         PageID2015).

114.     Plaintiffs deny the allegations in Paragraph 114 to the extent that a corrections officer
         could not reasonably believe they may be assaulted by an inmate when said inmate
         did not make any such movement towards the COs. As Plaintiff Bayong was sitting
         on his bed, he was sucker-punched by a CO, thrown to the floor, handcuffed, and then

beaten, which was not reasonable force for the situation. (Bayong Depo., Doc. 31, PageID227-228). Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

115. Plaintiffs deny the allegation in Paragraph 115 that Mr. Bayong made a movement toward any CO inside cell C-20 that could have been perceived as a threat. Plaintiff Bayong never physically came at any officer, he never lunged towards Officer Roberts or any other officer, and he never resisted being handcuffed at any time on October 20, 2020. (Bayong Depo., Doc. 31, PageID227-228).

116. Plaintiffs deny the allegation in Paragraph 116. Plaintiff Bayong never physically came at any officer, he never lunged towards Officer Roberts or any other officer, and he never resisted being handcuffed at any time on October 20, 2020. (Bayong Depo., Doc. 31, PageID227-228).

117. Plaintiffs deny the allegation in Paragraph 117. Plaintiff Bayong nor Plaintiff Adem resisted orders from Corrections Officers on October 20, 2020. At that point in the assault, the Corrections Officers were not giving them orders, but yelling verbal abuse like, "Before I lose my job, I'll kill you first you fucking immigrant", "goat", "monkey", and "fucking terrorist". (Bayong Depo, Doc. 31, PageID227-228; Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015; Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

118. Plaintiffs deny the allegation in Paragraph 118. Plaintiff Bayong never resisted being handcuffed at any time on October 20, 2020. (Bayong Depo., Doc. 31, PageID227-228).

119. Plaintiffs admit to the statements in Paragraph 119.

120.     Plaintiffs deny the statements in Paragraph 120. Officer Blanton never intended to maintain distance, as Plaintiff Adem was complying when he was slammed to the ground by Officer Blanton. Plaintiff Adem was interior to the cell and did not receive orders to leave the doorway. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

121.     Plaintiffs deny the allegations made in Paragraph 121. Plaintiff Adem was complying when he was slammed to the ground by Officer Blankton and handcuffed to be beaten; he did not resist the use of force or smack away a hand. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

122.     Plaintiffs deny the allegations made in Paragraph 122. Plaintiff Adem was complying when he was slammed to the ground by Officer Blankton and handcuffed to be beaten. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

123.     Plaintiffs deny the allegations made in Paragraph 123. Plaintiff Adem was complying when he was slammed to the ground by Officer Blankton and handcuffed to be beaten, and therefore not a threat. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

124.     Regarding Paragraph 124, Plaintiff Adem admits that he continued to comply with orders after being slammed to the ground, and that he was put in handcuffs. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

125.     Plaintiffs deny the allegation in Paragraph 125. Plaintiff Adem was wearing a mask and later provided the mask, which was blood-stained from the October 20, 2020 beating, to his lawyer Zachary Sanders. (Adem Depo. I, Doc. 32, PageID359).

126.     Plaintiff admits the allegations in Paragraph 126.

127.    Plaintiffs deny the statements in Paragraph 127. Plaintiff Adem observed Plaintiff Bayong being beaten and thrown down. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

128.    Plaintiffs deny the allegations in Paragraph 128 to the extent that both Plaintiffs were separated and put into isolation after the October 20, 2020 use of force. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2025).

129.    Plaintiffs admit to the statements in Paragraph 129.

130.    Plaintiffs admit to the facts in Paragraph 130.

131.    Plaintiffs deny the statements in Paragraph 131 to the extent that Plaintiff Bayong identified Officer Browning as one of the officers that were involved in the August 17th, 2020 use of force against Plaintiff Bayong. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2022).

132.    Plaintiffs deny the statements in Paragraph 132 to the extent that five additional correction officers responded to Corrections Officer Crowley's October 20, 2020 request for assistance and immediately arranged themselves to block witnesses ability to see through the door into the cell. (Bayong Force Review, Doc. 36-4, PageID713; Adem Force Review, Doc. 36-5, PageID725-26; Officer Statements, Doc. 36-8, PageID863, 869, 905, 909; Roberts, Doc. 34-1, PageID444; Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015; Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

133.    Plaintiffs deny the statements in Paragraph 133 to the extent that five additional correction officers entered Plaintiff's cell and began beating up Plaintiff Adem. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

134.    Plaintiffs deny the statements in Paragraph 134 to the extent that the force used against Plaintiff Bayong and Adem was used as punishment as shown by the CO's asking Plaintiff Bayong, "Do you want to pack your shit, or do you want us to assault you?"  (Bayong Depo., Doc. 31, PageID234).

135.    Plaintiffs deny the statements in Paragraph 135. Noncompliance does not include clarifying questions and does not rise to the level of a threat to require use of force. "Where the threat is not immediate and/or the detainee is in an isolated location, the officer shall make every effort to resolve the situation without the use of force." (McCampbell Expert Report; Doc. 56-7, Page 34; Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015; Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2022).

136.    Plaintiffs dispute the facts in Paragraph 136 to the extent that the medical professional who evaluated Plaintiff Adem refused to take photos of his injuries and failed to record his injuries accurately. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

137.    Plaintiffs admit to the facts in Paragraph 137.

138.    Plaintiffs dispute the facts in Paragraph 138. The medical professional who evaluated Plaintiff Adem refused to take photos of his injuries and failed to record his injuries accurately. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

139.    Plaintiffs admit to the facts in Paragraph 139.

140.    Plaintiffs admit to the facts in Paragraph 140.

141.    Plaintiffs admit to the facts in Paragraph 141.

142.    Plaintiffs admit to the facts in Paragraph 142.

143.        Plaintiffs admit to the facts in Paragraph 143.

144.        Plaintiffs admit to the facts in Paragraph 144.

145.        Plaintiffs admit to the facts in Paragraph 145.

146.        Plaintiffs admit to the facts in Paragraph 146.

147.        Plaintiffs admit to the facts in Paragraph 147.

148.        Plaintiffs admit to the facts in Paragraph 148.

149.        There are not sufficient facts in the record for Plaintiffs to admit or deny Paragraph

            149.

150.        Plaintiffs deny the statements in Paragraph 150 to the extent that when Plaintiff

            Bayong arrived at his new H-Pod cell on October 20, 2020, his handcuffs were not

            immediately removed. Instead, Officer A. Roberts asked Plaintiff Bayong to kneel

            down facing the table and began punching Plaintiff Bayong with closed fists upon his

            head and face. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1,

            PageID2025).

151.        Plaintiffs deny the statements in Paragraph 151 to the extent that when Plaintiff

            Bayong was taken to an empty cell by Officer A. Roberts and a second corrections

            officer, a third officer blocked the door, preventing anyone from seeing the beating of

            Plaintiff Bayong. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1,

            PageID2025).

152.        Plaintiffs deny the statements in Paragraph 152 to the extent that when Plaintiff

            Bayong was taken to an empty cell by Officer A. Roberts and a second corrections

            officer, a third officer blocked the door, preventing anyone from seeing the beating of

Plaintiff Bayong. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

153.    Plaintiffs deny the statements in Paragraph 153 stating that Mr. Adem did not personally see anything that allegedly occurred between Mr. Adem and Corrections Officer Roberts inside the H-Pod cell. Mr. Adem saw the correctional officers take Mr. Bayong into the cell, and then heard Mr. Bayong screaming as there were sounds of beating and kicking. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

154.    Plaintiffs deny the statements in Paragraph 154. Plaintiff Bayong was taken to an empty cell by Officer A. Roberts along with a second corrections officer. A third officer blocked the doorway. Correction Officer A. Roberts started punching Mr. Bayong with closed fists all over his head and face. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2025).

155.    Plaintiffs admit the statement in Paragraph 155 but note that the surveillance cameras in Butler County Jail did not continually record all camera feeds. If the control center was notified that there was an incident, the staff could then activate recordings. (McCampbell Expert Report; Doc. 56-7, Page 9).

156.    Plaintiffs deny the statements in Paragraph 156. Plaintiff Bayong states that he would not tell medical staff he had no medical issues after being beaten with all kinds of injury and pain. (Bayong Depo., Doc. 31, PageID240).

157.    Plaintiffs deny Paragraph 157 to the extent that Plaintiff Bayong stated that his understanding was that if he told forensics that he was having mental health issues, he

would be taken "to a place you do not want to go." (Bayong Depo., Doc. 31, PageID241).

158.   Plaintiffs admit to the facts in Paragraph 158.

159.   Plaintiffs admit to the facts in Paragraph 159.

160.   Plaintiffs admit to the facts in Paragraph 160.

161.   Plaintiffs admit to the facts in Paragraph 161.

162.   Plaintiffs admit to the facts in Paragraph 162.

163.   Plaintiffs admit to the facts in Paragraph 163.

164.   Plaintiffs admit to the facts in Paragraph 164.

165.   Plaintiffs admit to the facts in Paragraph 165, except to note that this was an initial investigation, not an investigation happening "again".

166.   Plaintiffs admit to the facts in Paragraph 166, except to note that this was an initial investigation, not an investigation happening "again".

167.   Plaintiffs admit to the facts in Paragraph 167.

168.   Plaintiffs admit to the facts in Paragraph 168.

169.   Plaintiffs admit to the facts in Paragraph 169.

170.   Plaintiffs admit to the facts in Paragraph 170.

171.   Plaintiffs admit to the facts in Paragraph 171.

172.   Plaintiffs admit to the facts in Paragraph 172.

173.   Plaintiffs admit to the facts in Paragraph 173.

174.   Plaintiffs admit to the facts in Paragraph 174.

175.   Plaintiffs admit to the facts in Paragraph 175.

176.   Plaintiffs admit to the facts in Paragraph 176.

177.     Plaintiffs admit to the facts in Paragraph 177.

178.     Plaintiffs admit to the facts in Paragraph 178.

179.     Plaintiffs deny the allegations in Paragraph 179. Plaintiff Bayong recalls the specifics of the October 28, 2020 incident with Correction Officer A. Roberts in his corrected declaration. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2026).

180.     Plaintiffs admit to the statements in Paragraph 180.

181.     Plaintiffs admit to the statements in Paragraph 181.

182.     Plaintiffs deny the allegations in Paragraph 182. Plaintiff Bayong did not make any gestures with his fists. Plaintiff Bayong requested to go back into the visitation room with his attorney to inform his attorney of the incident with CO Roberts. Correction Officer A. Roberts began to grab Mr. Bayong and dragged him back to his cell in isolation. Another correction officer saw that A. Roberts was being overly aggressive with Mr. Bayong when Correction Officer Roberts had made a fist like he was going to punch Mr. Bayong. (Corrected Declaration of Bayong Brown Bayong, Doc. 87-1, PageID2026).

183.     Plaintiffs admit the statements in Paragraph 183.

184.     Plaintiffs admit to the facts in Paragraph 184.

185.     Plaintiffs admit to the facts in Paragraph 185.

186.     Plaintiffs admit to the facts in Paragraph 186.

187.     Plaintiffs admit to the facts in Paragraph 187.

188.     Plaintiffs admit to the facts in Paragraph 188.

189.     Plaintiffs admit to the facts in Paragraph 189.

190.     Plaintiffs deny the statements made in Paragraph 190 to the extent that detainees are punished for utilizing grievance procedures, such as when Mr. Adem's commissary was taken away in punishment for his mother reporting Butler County Jail abuse against him to ICE. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2017). Further, Plaintiffs deny whether there is an actual grievance process at Butler County Jail. The vernacular in the Butler County jail is that grievances are termed "kites", and the word "kite" is not in the jail's policy; nor is that language in the Inmate Handbook. (McCampbell Expert Report; Doc. 56-7, Page 15).

191.     Plaintiffs admit to the statements in Paragraph 191.

192.     Plaintiffs admit to the statements in Paragraph 192.

193.     Plaintiffs admit to the statements in Paragraph 193.

194.     Plaintiffs admit to the statements in Paragraph 194.

195.     Plaintiffs deny the allegations in Paragraph 195 to the extent that Plaintiff Bayong states that he did not answer any questions because he did not know who the individuals were, nor that they were agents.  (Bayong Depo., Doc. 31, PageID254).

196.     Plaintiffs admit to the statements in Paragraph 196.

197.     Plaintiffs admit to the statements in Paragraph 197.

198.     Plaintiffs admit to the statements in Paragraph 198.

199.     Plaintiffs admit to the statements in Paragraph 199.

200.     Plaintiffs admit to the statements in Paragraph 200.

201.     Plaintiffs admit to the statements in Paragraph 201.

202.     Plaintiffs admit to the statements in Paragraph 202.

203.     Plaintiffs admit to the statements in Paragraph 203.

204.        Plaintiffs admit to the statements in Paragraph 204.

205.        Plaintiffs admit to the statements in Paragraph 205.

206.        Plaintiffs admit to the statements in Paragraph 206.

207.        Plaintiffs admit to the statements in Paragraph 207.

208.        Plaintiff admits to Paragraph 208 to the extent that that is a correct quotation from

            that document. However, Plaintiffs note that that conclusion has little or no factual

            basis; one to several correctional officers are involved in each incident of abuse, so

            there would be no need for all 16 correctional officers to explicitly collaborate.

            (Investigation, Doc. 36-7, PagID750). As evidenced below in Plaintiffs' Proposed

            Disputed Issues of Material Facts, Butler County Jail has a widespread culture of

            abuse.

209.        Plaintiffs admit to the statements in Paragraph 209.

210.        Plaintiffs admit to the statements in Paragraph 210.

211.        Plaintiffs admit to the statements in Paragraph 211.

212.        Plaintiffs admit to the statements in Paragraph 212.

213.        Plaintiffs admit to the statements in Paragraph 213.

214.        Plaintiffs admit to the statements in Paragraph 214.

215.        Plaintiffs admit to the statements in Paragraph 215.

216.        Plaintiffs admit to the statements in Paragraph 216.

217.        Plaintiffs admit to the statements in Paragraph 217.

218.        Plaintiffs admit to the statements in Paragraph 218.

219.        Plaintiffs admit to the statements in Paragraph 219.

220.        Plaintiffs admit to the statements in Paragraph 220.

221.    Plaintiffs admit to the statements in Paragraph 221.

222.    Plaintiffs admit to the statements in Paragraph 222.

223.    Plaintiffs admit to the statements in Paragraph 223.

224.    Plaintiff objects to the statements presented in Paragraphs 224 as irrelevant.
        Notwithstanding this objection, Plaintiffs admit the same.

225.    Plaintiff objects to the statements presented in Paragraphs 225 as irrelevant.
        Notwithstanding this objection, Plaintiffs admit the same.

226.    Plaintiff objects to the statements presented in Paragraphs 226 as irrelevant.
        Notwithstanding this objection, Plaintiffs admit the same.

227.    Plaintiff objects to the statements presented in Paragraphs 227 as irrelevant.
        Notwithstanding this objection, Plaintiffs admit the same.

228.    Plaintiffs admit to Paragraph 228.

229.    Plaintiffs admit to Paragraph 229.

230.    Plaintiffs admit to Paragraph 230.

231.    Plaintiffs admit to Paragraph 231.

232.    Plaintiffs admit to Paragraph 232.

233.    Plaintiffs admit to Paragraph 233 to the degree that Mr. Bayong can remember; he
        remembers some kind of physical confrontation. (Bayong Depo., Doc. 31,
        PageID192-93 ("I can't actually remember what happened. But he used some kind of
        a racial slur or something or said something… which started the whole
        confrontation"; "I can't remember. I can't remember all that happened during that
        incident. But it was some kind of -- I don't know if it was some kind of racial slur that

was used or something. So I can't remember or something. I can't -- I'm trying to remember what happened.")).

234.    Paragraph 234 is an argument of law, not a statement of fact.

235.    Paragraph 235 is an argument of law, not a statement of fact.

236.    Paragraph 236 is an argument of law, not a statement of fact.

237.    Plaintiffs admit to the statement in Paragraph 237 but note this name is a misspelling of Officer Blanton, which both parties acknowledge is a correctional officer at Butler County Jail.

238.    Plaintiffs admit to the statement in Paragraph 238.

239.    Plaintiffs admit to the statement in Paragraph 239.

240.    Plaintiffs admit to the statementParagraph 240.

241.    Regarding Paragraph 241, Plaintiffs admit that Mr. Bayong was issued such a disciplinary ticket. There are not sufficient facts in the record for Plaintiffs to admit or deny the alleged conduct of Mr. Bayong underlying the ticket.

242.    Plaintiffs admit to the statement in Paragraph 242.

243.    Plaintiffs admit to the statement in Paragraph 243.

244.    Plaintiffs admit to the statements in Paragraph 244.

245.    Plaintiffs admit to the statements in Paragraph 245.

246.    Plaintiffs admit to the statements in Paragraph 246

247.    Plaintiffs admit to the statements in Paragraph 247.

248.    Plaintiffs admit to the statements in Paragraph 248.

249.    Plaintiffs admit to the statements in Paragraph 249.

250.    Plaintiffs admit to the statements in Paragraph 250.

251.    Plaintiffs admit to the statements in Paragraph 251.

252.    Plaintiffs admit to the statements in Paragraph 252.

253.    Plaintiffs admit to the statements in Paragraph 253.

254.    Plaintiffs admit to the statements in Paragraph 254.

255.    Plaintiffs admit to the statements in Paragraph 255.

256.    Plaintiffs admit to the statements in Paragraph 256.

257.    Plaintiffs deny the statements made in Paragraph 257, to the extent that Plaintiffs
deny that Butler County provided "training lesson plans for operations critical to this
review – use of force, inmate disciplinary processes, staff duty to report, management
of inmates, investigations, accountability, and leadership obligations." (McCampbell
Expert Report, Doc. 56-7, Page 13).

258.    Plaintiffs admit to the statements in Paragraph 258.

259.    Plaintiffs admit to the statements in Paragraph 259.

260.    Plaintiffs admit to the statements in Paragraph 260.

261.    Plaintiffs deny the statements in Paragraphs 261, to the extent they contend that
up-to-date training was actually ensured. The Butler County Jail was shown to
provide "inadequate supervision and training for jail staff." BCJ also "failed to
develop and implement policies within the mandates of the State's Minimum
Standards and failed to provide any credible training." (McCampbell Expert Report;
Doc. 56-7, Page 63).

262.    Plaintiffs deny the statements in Paragraphs 262, to the extent they contend that
competency was ensured in all duties. The Butler County Jail was shown to provide
"inadequate supervision and training for jail staff." BCJ also "failed to develop and

implement policies within the mandates of the State's Minimum Standards and failed
to provide any credible training." (McCampbell Expert Report; Doc. 56-7, Page 63).

263.    Plaintiffs admit to the statements in Paragraph 263.

264.    Plaintiffs admit to the statements in Paragraph 264.

265.    Plaintiffs admit to the statements in Paragraph 265.

266.    Plaintiffs admit to the statements in Paragraph 266.

267.    Plaintiffs deny the statements made in Paragraphs 267. Defendants failed to conduct
impartial and adequate investigatory and disciplinary processes into suspicious uses
of force. Susan McCampbell reviewed twenty-five Butler County Use of Force
investigations from 2018-2019 and found an "absence of any oversight or questions
from the Sheriff's Office jail commanders (or anyone else) regarding these incidents"
and "insufficient justification provided for uses of force, and supervisors and leaders
who sign off on the reports apparently did not question the absence of specifics."
(McCampbell Expert Report; Doc. 56-7, Page 38).

268.    Plaintiffs admit to the statements made in Paragraph 268.

269.    Plaintiffs admit to the statements made in Paragraph 269.

270.    Plaintiffs admit to the statements made in Paragraph 270.

271.    Plaintiffs admit to the statements made in Paragraph 271.

272.    Plaintiffs admit to the statements made in Paragraph 272.

273.    Plaintiffs admit to the statements made in Paragraph 273.

274.    Plaintiffs admit to the statements made in Paragraph 274.

275.    Plaintiffs admit to the statements made in Paragraph 275.

276.    Plaintiffs admit to the statements made in Paragraph 276.

277.     Plaintiffs admit to the statements made in Paragraph 277.

278.     Plaintiffs admit to the statements made in Paragraph 278.

279.     Plaintiffs admit to the statements made in Paragraph 279.

280.     Plaintiffs admit to the statements made in Paragraph 280.

281.     Plaintiffs admit to the statements made in Paragraph 281.

282.     Plaintiffs admit to the statements made in Paragraph 282.

283.     Plaintiffs admit to the statements made in Paragraph 283.

284.     Plaintiffs admit to the statements made in Paragraph 284.

285.     Plaintiffs admit to the statements made in Paragraph 284.

286.     Plaintiffs admit to the statements made in Paragraph 286.

287.     Plaintiffs admit to the statements made in Paragraph 287.

288.     Plaintiffs admit to the statements made in Paragraph 288.

289.     Plaintiffs admit to the statements made in Paragraph 289.

290.     Plaintiffs admit to the statements made in Paragraph 290.

291.     Plaintiffs admit to the statements made in Paragraph 291.

292.     Plaintiffs admit to the statements made in Paragraph 292.

293.     Plaintiffs admit to the statements made in Paragraph 293.

294.     Plaintiffs admit to the statements made in Paragraph 294.

295.     Plaintiffs admit to the statements made in Paragraph 295.

296.     Plaintiffs admit to the statements made in Paragraph 296.

297.     Plaintiffs admit to the statements made in Paragraph 297.

298.     Plaintiffs admit to the statements made in Paragraph 298.

299.     Plaintiffs admit to the statements made in Paragraph 299.

300.      Plaintiffs admit to the statements made in Paragraph 300.

301.      Plaintiffs admit to the statements made in Paragraph 301.

302.      Plaintiffs admit to the statements made in Paragraph 302.

303.      Plaintiffs admit to the statements made in Paragraph 303.

304.      Plaintiffs admit to the statements made in Paragraph 304.

305.      Plaintiffs admit to the statements made in Paragraph 305.

306.      Plaintiffs admit to the statements made in Paragraph 306.

307.      Plaintiffs admit to the statements made in Paragraph 307.

308.      Plaintiffs admit to the statements made in Paragraph 308.

309.      Plaintiffs admit to the statements made in Paragraph 309.

310.      Plaintiffs admit to the statements made in Paragraph 310.

311.      Plaintiffs admit to the statements made in Paragraph 311.

312.      Plaintiffs admit to the statements made in Paragraph 312.

313.      Plaintiffs admit to the statements made in Paragraph 313.

314.      Plaintiffs admit to the statements made in Paragraph 314.

315.      Plaintiffs admit to the statements made in Paragraph 315.

316.      Plaintiffs admit to the statements made in Paragraph 316.

317.      Plaintiffs deny the statements made in Paragraph 317. The 2018 DHS audit found repeated deficiencies in  the Butler County Jail's policies around use of force. (2018 DHS Report, Doc. 56-5, Pages 8-9).

318.      Plaintiffs admit to the statements made in Paragraph 318.

319.      Plaintiffs deny the statements made in Paragraph 319 to the extent that Mr. Jones's phone number was provided in Plaintiffs' Supplement to Initial Disclosures.

320.      Plaintiffs deny the statements made in Paragraph 320 to the extent that Mr. Balfour's

phone number was provided in Plaintiffs' Supplement to Initial Disclosures.


## PLAINTIFFS' PROPOSED DISPUTED ISSUES OF MATERIAL FACTS

Plaintiffs, Bayong Brown Bayong and Ahmed Adem, through undersigned counsel,

propose the following list of issues of material fact that must be tried, in connection with their

previously filed Opposition to Defendant's Motion for Summary Judgment, in accordance with

this Court's August 23, 2024 Order and Civil Standing Order. The issues of material facts are as

follows:


1.      Plaintiff Bayong Brown Bayong was booked into the Butler County Jail on June 5,

2020. (Investigation, Doc. 36-7, PageID752-53, 755; *see also* Bayong, Doc. 31,

PageID184-85).

2.      Plaintiff Ahmed Adem was booked into the Butler County Jail on July 21, 2020.

(Adem Depo. I, Doc. 32, PageID333; Investigation, Doc. 36-7, PageID772, 822,

783).

3.      Mr. Bayong and Mr. Adem were both housed in the Butler County Jail in 2020.

(Investigation, Doc. 36-7, PageID751-53 ("hold for ICE"), 755, 764, 770, 772 ("hold

for ICE"), 779).

4.      Mr. Bayong was housed in Butler County Jail immigration detention center during the

Summer and Fall of 2020. (Corrected Declaration of Bayong Brown Bayong; Doc.

87-1, PageID2021).

5.      Mr. Bayong had high blood pressure which caused swelling in his legs, and it was hard for him to walk. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2021).

6.      Mr. Bayong was also experiencing some long-term side effects from having Covid-19 when he was at Morrow County Jail. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2021).

7.      Mr. Bayong was fearful for his life and well-being due to physically and verbally abusive treatment by corrections officers at Butler County Jail Detention Center. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2021).

8.      On August 13, 2020, Mr. Bayong was given a disciplinary ticket related to an allegation that he was not wearing a mask by Corrections Officer Browning. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2021).

9.      Mr. Bayong thought that he had been having a productive discussion with Officer Browning about the mask, explaining that he had just come back from the gym, and was out of breath, and this is why he had my mask just below his nose to catch his breath. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2021).

10.     Officer Browning seemed to understand, but Officer Browning locked Mr. Bayong down 90 minutes earlier than the other detainees as a preliminary punishment. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2021).

11.     A few hours later, while Mr. Bayong was asleep in the middle of the night, Correctional Officer Browning served a ticket to Mr. Bayong without explaining the different types of violations he had cited. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2021).

12.      Mr. Bayong asked Officer Browning to explain the violations so that he could understand the ticket, but Officer Browning kept blowing Mr. Bayong off and ignoring his questions. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2021).

13.      Officer Browning took the ticket back and then said he would return to explain the violations but he did not come back that day. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2021).

14.      In the morning at breakfast, around 5 a.m., Mr. Bayong asked Mr. Browning to explain the violations so that Mr. Bayong could sign the ticket. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2021).

15.      Officer Browning again said that he will come to Mr. Bayong's cell soon to explain the ticket, but instead of coming to explain the ticket, he wrote "Refused to Sign" and slid the copy of the ticket to Mr. Bayong. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2021).

16.      A refusal to sign a Butler County Jail ticket is treated as a case where the inmate gives up his right to fight the ticket. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

17.      Hence, the "refusal to sign" was equated to Mr. Bayong being presumed guilty and Mr. Bayong was given sanctions without being able to see a sergeant to have the ticket read and heard. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

18.      On August 17th around 10 p.m., Officer Browning asked Mr. Bayong to pack up his stuff as Mr. Bayong was being moved to solitary confinement, also known as the

"Hole", as a part of punishment for the ticket. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

19.   As Mr. Bayong was packing his stuff, Officer Browning, and some other correction officers who Officer Browning had called for back-up, came into his room. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

20.   Mr. Bayong was not able to identify nor could he know the names of the others, as the correction officers often do not have any identification on them. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

21.   Mr. Bayong was being compliant and packing up his stuff, the officers were verbally abusive and physically started beating and pushing him around and asked me to hurry up. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

22.   One of the correction officers pushed and punched Mr. Bayong, and stated:  "Hurry up and get your shit together mother fucker" and other abusive things. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

23.   The correctional officers continued to be loud and use abusive language. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

24.   Mr. Bayong has severe swelling in his legs and feet and was seen medical by staff for this condition, while he was at Butler County Jail Detention Center. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

25.   Mr. Bayong tried to explain to the officers that he had a lot of pain in his legs because of his high blood pressure. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

26. The guards did not listen to Mr. Bayong. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

27. Mr. Bayong began crying and begging the officers to please let him leave quietly without the beating and commotion. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

28. The officers became more aggressive and started yelling and beating Mr. Bayong more. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

29. The officers used their fists and hands on Mr. Bayong (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

30. Mr. Bayong could hear the other inmates in C-Pod yelling at the guards to stop from their cells. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

31. The correction officers pulled Mr. Bayong out of his cell (C-46), which was on the second story of the pod, and the correction officers started to push him to move faster as Mr. Bayong was walking towards the stairs. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

32. Another inmate, Mory Keita heard one of the officers yell, "You do the fuck I say." (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

33. As Mr. Bayong started to walk down the stairs, the pain in his legs was getting worse. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022).

34. Another inmate, Mantas Petrauskas, observed Mr. Bayong walking very slowly and saying that he was in pain with his legs. (Corrected Declaration of Mantas Petrauskas; Doc. 88-1, PageID2029).

35.     Mr. Bayong held the railing and was walking down the metal staircase, one step at a time. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2022-2023).

36.     Mr. Keita observed Mr. Bayong coming down the stairs and having a hard time. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

37.     Mr. Keita observed Mr. Bayong moving slowly and the correctional officers yelling at him. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

38.     Mr. Keita observed Mr. Bayong having a hard time moving, limping, and trying to hold onto the railing for balance. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

39.     About halfway down the metal stairs, one of the officers got really angry with Mr. Bayong and started verbally abusing him. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

40.     Mr. Bayong felt a strong push from behind that caused him to fall head-first at the bottom of the stairs. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

41.     There are fifteen (15) stairs, and Mr. Bayong was pushed when he was on the sixth (6th) stair from the bottom. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

42.     Mr. Bayong is 6 feet and 4 inches. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

43.  As Mr. Bayong fell, he took a stutter step and landed head first on the concrete about 2 feet at the base of the stairs. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

44.  Mr. Keita observed Mr. Bayong come down and hit his head. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

45.  Mr. Bayong was scared that he was going to die. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

46.  The stairs are metal. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

47.  Mr. Bayong had wounds on his knees, elbows, and ankles, along with a severe pain in his neck, a severe headache with concussion type symptoms (blurry vision, dazed, and not able to walk properly). (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

48.  Mr. Keita observed the officers dragging Mr. Bayong out to the main area while Mr. Bayong was bleeding on his head and his legs. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

49.  The description of the correction officer that pushed Mr. Bayong is that of Correction Officer Phipps, and if Correction Officer Phipps is presented in front of Mr. Bayong or the other witnesses to that incident, the witnesses will be able to identify him. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

50.  Mr. Petrauskas observed the correction officer behind Mr. Bayong push him and observed Mr. Bayong fall down the stairs. (Corrected Declaration of Mantas Petrauskas; Doc. 88-1, PageID2029).

51.     Mr. Petrauskas identified the correction officer who pushed Mr. Bayong as short with blonde hair. (Corrected Declaration of Mantas Petrauskas; Doc. 88-1, PageID2029).

52.     There are also cameras in the day room area that would have been covering the stairs. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

53.     Mr. Bayong was in terrible pain and crying and begging. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

54.     The correction officers did not attend to his wounds even though he was badly hurting. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

55.     The officers picked Mr Bayong up and dragged him across the gym and took him to solitary confinement. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

56.     A nurse came to see Mr. Bayong who was verbally abusive instead of trying to help him. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

57.     Mr. Bayong does not know her name. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

58.     Mr. Petrauskas observed Mr. Bayong crying and saying, "What did I do?" (Corrected Declaration of Mantas Petrauskas; Doc. 88-1, PageID2029).

59.     Mr. Petrauskas observed Mr. Bayong looked very badly, and had bleeding on his face and legs. (Corrected Declaration of Mantas Petrauskas; Doc. 88-1, PageID2029).

60.     The nurse yelled at Mr. Bayong saying that he was pretending to have a problem with his legs and that there is nothing wrong with him. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

61.    Mr. Bayong was not treated for his head, neck, or other injuries. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

62.    Mr. Bayong was not given any bandages. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

63.    Mr. Bayong was not taken to a doctor. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

64.    Mr. Bayong had lasting marks on his legs and elbow from the fall. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

65.    Mr. Bayong was taken to a stifling isolation cell in a different part of the jail for five days. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

66.    Mr. Bayong was subject to 23 hour a day lockdown with no access to even a phone call, and no proper medical evaluation or treatment. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

67.    Mr. Bayong was finally given pain medication when he complained about the severity of his pain. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

68.    Mr. Bayong had headaches and neck pain from the incident for weeks after. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2023).

69.    On October 20, 2020, Mr. Bayong woke up that morning with a sore throat and asked the medical department for medical attention. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

70.     The nurse came around 8 a.m. and checked his vitals along with his temperature, but made no comments about either. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

71.     Mr. Bayong asked for some medication and the nurse gave him three ibuprofen. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

72.     Afterwards, Mr. Bayong went back to his cell. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

73.     Around 9 a.m., when the officers opened the doors of our cells for recreation, Mr. Bayong's cell door stayed closed. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

74.     When he asked Correction Officer Crowley why the cell door had not opened, Officer Crowley told Mr. Bayong that he and his cellmate would have to go into quarantine due to a possible Covid-19 infection. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024; Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

75.     Mr. Bayong's bunkmate, Ahmed, asked Mr. Crowley if we would quarantine in the same Pod (C-Pod) where they were currently housed instead of being moved to a special quarantine pod. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

76.     Mr. Adem also asked why he needed to be moved along with Mr. Bayong because Mr. Adem was not sick and had no symptoms. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

77.     Mr. Crowley said that the medical department is the one who controlled this decision and it was not in his power to change it. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

78.     Around 15 minutes later, a group of five (5) or six (6) correction officers came to their cell. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

79.     Some came in and one or two stayed in the doorway to block the view. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

80.     Mr. Adem asked to speak with a medical supervisor to understand why he was being moved. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

81.     At this point, the correction officers got aggressive and started to beat Mr. Adem. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

82.     Mr. Adem was thrown to the ground and beaten by Correction Officer Blanton. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

83.     Mr. Bayong was seated on his bed when a correctional officer punched Mr. Bayong unexpectedly, and then three of the correction officers punched him with closed fists. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

84.     The correction officers said to Mr. Bayong while he was being punched, "You guys got no right to be in this place" and "Hurry the mother fuck up you bitch." (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024).

85.     Mr. Bayong was crying and asking the correction officers, "What have I done?" (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2024-2025).

86.     Correction Officer A. Roberts said that he wanted to kill Mr. Bayong as he threw Mr. Bayong on the floor and handcuffed him. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

87.     While Mr. Bayong was being handcuffed, other correction officers continued to punch and kick him on the head. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

88.     Correction Officer A. Roberts took Mr. Bayong out of his cell to the day room. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

89.     Correction Officer A. Roberts made Mr. Bayong sit on the day room table and yelled abusive things to him such as "I want to kill you, you monkey. I am going to kill you, you goat. I don't care. I am about to lose my job. Before I lose my job, I'll kill you first you fucking immigrant. I can't wait to fuck you up." (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

90.     Mr. Keita heard a Correctional officer yell "I'm going to fuck y'all up." (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

91.     Mr. Keita heard Mr. Adem and Mr. Bayong crying, and the sounds of a beating, kicking, and punching. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

92.     Mr. Keita observed Mr. Bayong being taken out to the main common area, where his face was swollen and Mr. Bayong was crying. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

93.     Mr. Keita observed the correctional officers laughing at Mr. Bayong. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

94.     Mr. Keita observed Officer A. Roberts put Mr. Bayong's head on the table and smack Mr. Bayong on the back of the head. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

95.     Mr. Keita observed Officer A. Roberts tell Mr. Bayong to stop moving, even though Mr. Bayong was not moving. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

96.     Mr. Keita observed Officer A. Roberts say, "You think anyone gives a fuck about you? Wait until I get you alone. I'll show you." (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

97.     Mr. Keita observed that Mr. Bayong was handcuffed during this. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

98.     Other inmates in the Pod heard what Correction Officer A. Roberts was saying and they yelled at him to stop. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

99.     Mr. Keita observed that many of the other inmates in the pod started yelling at the officers to stop. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

100.    Mr. Keita observed Officer A. Roberts yell back, "Anyone else want some? I will fuck you all up. Whatever we say goes." (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

101.    The nurse came in and checked on Mr. Bayong. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

102.	Mr. Bayong complained to the nurse of neck pain and other injuries on his head, legs and back from the beating. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

103.	The nurse said all she could see was a black eye. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

104.	The nurse said she could not see any knot on my neck or any other injuries. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

105.	Later on, both Mr. Bayong and Mr. Adem were transferred to "isolation" or solitary confinement in the H-pod. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

106.	As Mr. Bayong and Mr. Adem were being brought to the Hole, Mr. Petrauskas observed one of the correction officers yelling, "You want some more, you illegal piece of shit?" (Corrected Declaration of Mantas Petrauskas; Doc. 88-1, PageID2029).

107.	When they got to the H-pod, Correction Officer A. Roberts took Mr. Bayong inside an empty cell. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

108.	One more officer came into the cell with Correction Officer A. Robberts and a third officer blocked the door. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

109.	Correction Officer A. Roberts asked Mr. Bayong to kneel down facing the table. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

110.    While Mr. Bayong was still handcuffed, Correction Officer A. Roberts started punching Mr. Bayong with closed fists all over his head and face. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

111.    Afterwards, the handcuffs were removed and the correction officers left. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

112.    Mr. Bayong was bleeding from cuts on his face and also from his mouth and he thought that he had lost a lower tooth. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

113.    Mr. Bayong realized later that he had not lost a tooth, but rather, the beatings had made a much wider gap in his mouth. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

114.    Mr. Bayong received no treatment for his injuries. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

115.    Mr. Bayong was given ibuprofen, antibiotics and blood pressure medication only for his original medical conditions. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

116.    Mr. Bayong was not told whether he was tested for Covid-19 or whether he had Covid-19. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2025).

117.    On October 28, Correction Officer A. Roberts was involved in another incident with Mr. Bayong. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2026).

118.     Mr. Bayong was visiting with his attorney for his immigration case, Mr. Zachary
         Sanders of Catholic Charities. (Corrected Declaration of Bayong Brown Bayong;
         Doc. 87-1, PageID2026).

119.     As Mr. Bayong was coming back from the meeting, Correction Officer A. Roberts
         saw Mr. Bayong in the hallway. (Corrected Declaration of Bayong Brown Bayong;
         Doc. 87-1, PageID2026).

120.     Mr. Bayong asked if he could go back and tell his attorney something because, when
         Mr. Bayong saw A. Roberts, Mr. Bayong wanted to tell Attorney Sanders that
         Correction Officer A. Roberts who had beaten him. (Corrected Declaration of Bayong
         Brown Bayong; Doc. 87-1, PageID2026).

121.     Correction Officer A. Roberts began to grab Mr. Bayong and dragged him back to his
         cell in isolation. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1,
         PageID2026).

122.     Another correction officer saw that A. Roberts was being overly aggressive with Mr.
         Bayong when Correction Officer Roberts had made a fist like he was going to punch
         Mr. Bayong. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1,
         PageID2026).

123.     The other correction officer, who was a female, tried to take over and offered to take
         Mr. Bayong to his cell. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1,
         PageID2026).

124.     Correction Officer A. Roberts stated that he would "handle" Mr. Bayong. (Corrected
         Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2026).

125.     A Correction Officer A. Roberts stated, "he's a goat and I am going to take this goat back to where he belongs." (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2026).

126.     Before Correction Officer A. Roberts got to Mr. Bayong's cell in H- pod, Correction Officer A. Roberts, threw Mr. Bayong up against the wall in the hallway. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2026).

127.     Mr. Bayong and Mr. Adem were kept in isolation in H-Pod for 15 days. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2026).

128.     After October 20, 2020, when Mr. Bayong was at Butler County Jail Detention Center, he felt very scared for his life in the facility, every day. (Corrected Declaration of Bayong Brown Bayong; Doc. 87-1, PageID2026).

129.     On July 21, 2020, Mr. Adem was picked up from the Lebanon correctional facility where Mr. Adem had been serving a five-year sentence. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

130.     Mr. Adem was processed at around 1 or 2 p.m. at the ICE HQ processing center and did not have any food all day. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

131.     The ICE officers stated that Mr. Adem would be fed when they arrived at the detention center in Butler.  (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

132.     The ICE Officers also told Mr. Adem that he would be allowed to call his family and inform them of the move to the detention center. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

133.     Mr. Adem arrived at Butler County detention center several hours later. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

134.     Corrections Officer Phipps and Corrections Officer Washburn were the officers processing Mr. Adem. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

135.     Mr. Adem explained that he had not eaten all day and was starving. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

136.     Corrections Officer Phipps and Corrections Officer Washburn replied, "'we feed you when we want to." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

137.     Mr. Adem again explained that himself, and the other men in his group, had not eaten. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

138.     Corrections Officer Phipps and Corrections Officer Washburn stated that there was no talking about food. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

139.     The Correctional Officers then put rubber gloves on and told Mr. Adem to follow them out to the change room, where there were no cameras. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

140.     From there, the Correctional Officers began to beat Mr. Adem up, punching him in the face and neck and back. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

141.     Correctional Officer Washburn punched Mr. Adem straight in the mouth.

142.     The Correctional Officers threw Mr. Adem on to the ground and began kicking him while he was on the ground. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

143.     Correctional Officer Phipps put his knee on Mr. Adem's back and neck. Mr. Adem began to cry for help and said "I can't breathe." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

144.     Mr. Adem became really scared and began to say "Black Lives Matter," "Immigrants lives matter," "Please stop." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012).

145.     Then a third correctional officer, who Mr. Adem believes was a sergeant, came into the room and pointed a taser at him. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2012-2013).

146.     Mr. Adem laid there, taking the beating and wouldn't move because he was afraid the correctional officers were going to kill him. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

147.     Mr. Adem had never been so afraid in all of his life. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

148.     Afterwards, Mr. Adem was left bleeding all over, with a cut on his head and on his lip, as well as a black eye. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

149.     The correctional officers then pulled Mr. Adem up to do the body cavity search and then had him get dressed. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

150.    Mr. Adem had not been properly processed yet so the Correctional Officers took Mr. Adem's picture for his bracelet. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

151.    The correctional officers only took a photo of half of Mr. Adem's face because the other half was bruised and bloody. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

152.    The arm bracelet that Mr. Adem has is with the same half face picture. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

153.    The part of Mr. Adem's face that is visible in the photo shows some bruising/bump under his eye. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

154.    After taking pictures, the correctional officers led Mr. Adem through the hallway towards another cell, where he saw a forensics person/officer in the hallway named Ms. Cecila White. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

155.    Mr. Adem called out to her and said "Ma'am, I am not safe. There are no cameras. I am not safe." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

156.    At that point, Ms. White responded, "You are fine, you are on camera." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

157.    There was a female trustee whose name is unknown, who told Mr. Adem that this behavior is what they do, and she told him, "You are going to be okay." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

158.    The trustee was told to clean up the mess in the changing room since there was blood all over the floor. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

159.     A nurse came to see Mr. Adem, but only examined him through the glass. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

160.     After looking him over quickly, the Nurse said Mr. Adem was good. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

161.     Mr. Adem asked the nurse to take his picture, but she said, "No, you are good." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

162.     The nurse did not give Mr. Adem any bandages. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

163.     Mr. Adem again asked the nurse to take pictures of his injuries, but she refused and said that he was fine. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

164.      Correctional Officer Phipps told Mr. Adem to come sign his "ticket" because he had assaulted an officer. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

165.     Mr. Adem was kept in a booking cell until about 9pm. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

166.     Mr. Adem was cold and had chills, but he never received the blanket he was promised when he was processed. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

167.     Mr. Adem asked for his one phone call. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2013).

168.     The correctional officer said, "It says here that you had your phone call already." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

169.     The next day, Sergeant Hoffman came to Mr. Adem's cell to discuss his ticket. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

170.     He told Mr. Adem that he wanted to give Mr. Adem an opportunity to explain. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

171.     Mr. Adem explained what happened. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

172.     Sergeant Hoffman responded that he believed Mr. Adem, but he had to believe his officers, and sent Mr. Adem to the hole for 30 days. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

173.     During this time, Mr. Adem wasn't allowed to have phone calls or commissary, nor was he given any medical treatment. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

174.     While Mr. Adem was in the hole, his mom figured out where he was and called Butler County Jail. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

175.     Mr. Adem's mother was able to speak to a female trustee and the trustee told his mother that he had been beaten and that he was in the hole. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

176.     Mr. Adem's mother then called an Immigration office in Detroit and then called Immigration and Customs Enforcement in the District of Columbia to submit a complaint. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

177.     After Mr. Adem was released from the hole, someone from an ICE office called and told Mr. Adem they had heard his story and that they would look into it. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

178.    Mr. Adem never heard back from anyone from ICE about it. (Corrected Declaration
        of Ahmed Adem, Doc. 86-1, PageID2014).

179.    On October 20, 2020, Mr. Adem was awoken in the morning because a nurse wanted
        to see him in the day room. (Corrected Declaration of Ahmed Adem, Doc. 86-1,
        PageID2014).

180.    The nurse checked Mr. Adem's temperature and it was normal, so he was sent back to
        his cell. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

181.    The nurse had also checked Mr. Adem bunkie, Bayong's temperature before his.
        (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

182.    Around 9 or 9 30 a.m. when the inmates were supposed to be released from their
        cells, Mr. Adem and Mr. Bayong noticed that their door did not open. (Corrected
        Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

183.    Mr. Adem and Mr. Bayong were told, "Bad news you guys are going to H-Pod for
        isolation due to a covid concern." H-Pod is also referred to as the Hole. (Corrected
        Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

184.    Mr. Adem asked the officer why he needed to pack up and asked if someone could
        explain what was going on. (Corrected Declaration of Ahmed Adem, Doc. 86-1,
        PageID2014).

185.    Mr. Adem then asked if he could speak to a sergeant. (Corrected Declaration of
        Ahmed Adem, Doc. 86-1, PageID2014).

186.    Mr. Adem knew his temperature was normal. (Corrected Declaration of Ahmed
        Adem, Doc. 86-1, PageID2014).

187.     In the past, people were just kept in lockdown if there was a concern and Mr. Adem was curious why they were being brought to the hole. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2014).

188.     Mr. Adem was careful to be respectful, because he knew how dangerous the correctional officers were at the jail. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

189.     About 5 or 6 correctional officers entered and yelled, "Pack your shit right now," to Mr. Adem and Mr. Bayong. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

190.     The Correctional Officers that Mr. Adem recognized were Officers A. Roberts, Bartlet and Blanton, as well as a canine officer. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

191.     Two officers did not come in but they stood at the door, blocking the view so you couldn't see what was happening. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

192.     Correctional Officer Blanton started yelling, "You've got to pack your fucking shit up!" (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

193.     Then Correctional Officer Blanton slammed Mr. Adem to the ground, and then cuffed Mr. Adem and began kicking and punching him.  (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

194.     Mr. Adem said, "I am not moving, I am trying to comply." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

195.     Mr. Adem told the officers he was afraid because they handcuffed him, but they continued beating and kicking Mr. Adem. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

196.     The correctional officers punched Mr. Adem in his mouth, head, back and neck. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

197.     Mr. Adem had blood coming out of his mouth. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

198.     One of the officers kicked Mr. Adem on the back of his head and neck. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

199.     Mr. Adem believes it was Correctional Officer Blanton who kicked Mr. Adem on the back of his head and neck. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

200.     The Correctional Officers kept cursing and calling Mr. Adem and Mr. Bayong abusive names like "goat" and "monkey." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

201.     Correctional Officer A. Roberts kicked Mr. Adem straight in the back. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

202.     Correctional Officer A. Roberts called Mr. Adem, "a fucking terrorist," and then took Mr. Adem's prayer rug. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

203.     Correctional Officer A. Roberts then tried to flush Mr. Adem's prayer rug in the toilet. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

204.     Mr. Adem began to beg the officer not to do that. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

205.     Correctional Officer Blanton finally intervened and stopped A. Roberts from flushing the prayer rug. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

206.     Correctional Officer A. Roberts responded that Mr. Adem is, "a fucking terrorist." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

207.     Correctional Officer Blanton said to A. Roberts, "You need to calm down." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

208.     Correctional Officer A. Roberts asked Blanton, "Why?, I am already going to lose my job." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

209.     Correctional Officer A. Roberts then said to Mr. Adem and Mr. Bayong, "You guys are lucky to be alive. I want to kill you. You're a fucking goat. A fucking monkey. I can't wait to get you to where I can fuck you up. You motherfucking immigrants." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

210.     While the Correctional Officers beat on Mr. Adem, they also beat up Mr. Bayong on his bed. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

211.     The Correctional Officers threw Mr. Bayong down while Mr. Bayong was crying and begging not to be beaten. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

212.     The Correctional Officers took Mr. Bayong and Mr. Adem out to the day room. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2015).

213.     Mr. Keita observed correction officers drag Mr. Adem out to the day room. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

214.     Mr. Keita observed that Mr. Adem's lips and head were bleeding and that he looked very bad. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

215.     While Mr. Adem was in the day room, the Correctional Officers were laughing at Mr. Bayong stating they, "had fucked him up and he was crying like a baby." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

216.     A nurse checked Mr. Adem and Mr. Bayong in the day room. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

217.     Mr. Adem was bleeding on his lip and face and Mr. Adem's mask had been bloodied. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

218.     Mr. Adem asked the nurse to take pictures because he had been kicked in his neck and head. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

219.     The nurse said "You're fine, you don't need no pictures." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

220.     Mr. Adem insisted, saying, "Ma'am, I need pictures of my injuries." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

221.     Mr. Adem wanted a picture, because there were cameras in the day room and the hallways, but there were no cameras in the cells. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

222.     The nurse refused to give Mr. Adem any bandages. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

223.     While being led out of the day room to the Hole, Correctional Officer Blanton asked another officer to write Mr. Adem and Mr. Bayong up for the attack. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

224.     The other officer was far away from the incident and hadn't even seen what happened. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

225.     Mr. Adem had kept his mask because it was bloody and when his lawyer came, Mr. Adem gave it to him. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

226.     As they were walking to the Hole, Correctional Officer A. Roberts said to Mr. Adem, " I can't wait to get to H-Pod because I am going to fuck you up some more. You are so lucky to be alive." (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

227.     When they got to their cell in the Hole, three or four other guards, including Officer A. Roberts put Mr. Adem's face up against a wall. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

228.     The officers brought Mr. Bayong into the cell and began beating on him. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

229.     Mr. Adem could hear Mr. Bayong screaming and the sounds of beating and kicking. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

230.     There were no cameras in the cell. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

231.     When Mr. Adem was brought into the cell, Mr. Bayong was lying on the ground crying and in pain. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

232.     Mr. Bayong said that he had lost his tooth. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

233.     No one came and explained why Mr. Adem and Mr. Bayong had been moved. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

234.     Mr. Adem and Mr. Bayong later learned that Mr. Bayong had a high fever and they thought he had Covid. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

235.     No one ever came and tested either Mr. Adem or Mr. Bayong for Covid. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2016).

236.     At around four p.m. that day Mr. Adem called his mother and told her what happened. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2017).

237.     Mr. Adem's mother was very worried because of the Covid risk and she was worried that the officers would hurt Mr. Adem. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2017).

238.     A few hours later, the officers came and took Mr. Adem's commissary because of the ticket. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2017).

239.     The commissary was about $40 of snacks and food. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2017).

240.     The ticket included a charge of threats to personnel because Mr. Adem's mother had called and told them she was calling ICE. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2017).

241.     On October 21, 2020, Sergeant Thurkill and another correctional officer came to Mr. Adem's cell to discuss the ticket. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2017).

242.     Sergeant Thurkill told Mr. Adem and Mr. Bayong that inmates are not allowed to ask
         questions of the correctional officers. (Corrected Declaration of Ahmed Adem, Doc.
         86-1, PageID2017).

243.     Sergeant Thurkill said, "If they say move, move. I don't know what Pelosi and
         Obama told you happens here, but you're not welcome. And let me say, you all are
         lucky I wasn't the correction officer, because if I was the correction officer,, I'd have
         broken your fucking collar bones for resisting. I am tired of you all motherfuckers
         thinking you know shit and can do shit when you can't." (Corrected Declaration of
         Ahmed Adem, Doc. 86-1, PageID2017).

244.     Mr. Adem and Mr. Bayong were kept in the hole for 15 days. (Corrected Declaration
         of Ahmed Adem, Doc. 86-1, PageID2017).

245.     Mr. Adem and Mr. Bayong did not communicate with anyone during that time.
         (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2017).

246.     Mr. Adem and Mr. Bayong did not receive any medical care. (Corrected Declaration
         of Ahmed Adem, Doc. 86-1, PageID2017).

247.     Mr. Adem was scared at Butler County Jail and stated that he felt like [the officers]
         could do anything to you and no one will listen to your side of it because [the
         officers] will take you to a place where there are no cameras. (Corrected Declaration
         of Ahmed Adem, Doc. 86-1, PageID2017).

248.     Mr. Adem was in prison for nearly five years prior and during that time never had any
         discipline issues. (Corrected Declaration of Ahmed Adem, Doc. 86-1, PageID2017).

249.     Mr. Keita was so upset that he called a human rights organization. (Corrected
         Declaration of Mory Keita; Doc. 73-1, PageID1856).

250.     Mr. Keita is another inmate who was afraid to speak up because of the consequences. (Corrected Declaration of Mory Keita; Doc. 73-1, PageID1856).

*Facts Supporting Monell Liability*

251.     Butler County Jail has only one video camera to document use-of-force incidents. (2015 U.S. Department of Homeland Security Report; Doc. 56-4, PageID1317).

252.     Butler County Jail has no post orders or other procedures in place for testing the camera's operability. (2015 U.S. Department of Homeland Security Report; Doc. 56-4, PageID1317).

253.     There is no record or documentation of video capability testing being conducted at Butler County Jail." (2015 U.S. Department of Homeland Security Report; Doc. 56-4, PageID1317).

254.     Butler County Jail failed to designate responsibility for maintaining the video camera(s) and other video equipment. (2015 U.S. Department of Homeland Security Report; Doc. 56-4, Page1D1316).

255.     Butler County Jail does not regularly schedule testing to ensure all parts of video camera(s) and other video equipment, including batteries, are in working order. (2015 U.S. Department of Homeland Security Report; Doc. 56-4, Page1D1316).

256.     Butler County Jail has failed to keep backup supplies on hand (batteries, tapes, lens cleaners, etc). as required. (2015 U.S. Department of Homeland Security Report; Doc. 56-4, Page1D1316).

257. Butler County Jail's UOF policy does not contain written procedures for after-action reviews, nor is this information contained elsewhere. (2018 DHS Report; Doc. 56-6, Page1D1340). (All emphases original to the DHS report).

258. Butler County Jail's medical evaluations of the detainees did not contain a medical assessment of detainees after force was used. (2018 DHS Report; Doc. 56-6, Page1D1342).

259. Butler County Jail's deficiency in policy regarding video capabilities was noted in an inspection by the Department of Homeland Security in its 2015 audit. (2015 U.S. Department of Homeland Security Report; Doc. 56-4, Page1D1316).

260. The DHS reports from 2015 and 2018 detailed the policy changes that must occur regarding BCJ documentation regarding excessive force. (2015 U.S. Department of Homeland Security Report; Doc. 56-4, PageID1312-1316); 2018 DHS Report; Doc. 56-6, Page1D1339; McCampbell Expert Report; Doc. 56-7, Page 25-26).

261. Butler County Jail violated the Ohio Minimum Jail Standards. (McCampbell Expert Report; Doc. 56-7, Page 25-26).

262. Butler County Jail does not provide culture diversity training to its staff. (2018 DHS Report; Doc. 56-6, Page1D1340).

263. Under Butler County Jail's video policy, cameras do not automatically or continually record. (McCampbell Expert Report; Doc. 56-7, Page 9).

264. There was a County-reported total of 1,095 uses of force from 2018–2021. (McCampbell Expert Report; Doc. 56-7, Page 30, 41).

265. Almost none of the 1,095 uses of force were recorded by documents or investigations. (McCampbell Expert Report; Doc. 56-7, Page 31).

266.     The Butler County Sheriff's Office procedures to investigate uses of force in their jail are inadequate. (McCampbell Expert Report; Doc. 56-7, Page 38).

267.     An organization with oversight, boundaries, or reasonable policies pertaining to egregious uses of force is one that tolerates, and thereby condones and encourages, violence by taking no action on these incidents. (McCampbell Expert Report; Doc. 56-7, Page 38).

268.     McCampbell's Expert Report found that Butler County Jail's leadership conducted little investigation into uses of force. (McCampbell Expert Report; Doc. 56-7, Page 38).

269.     McCampbell's Expert Report found that Butler County jail failed to investigate all uses of force to, at a minimum, determine if the uses are objectively reasonable and meet agency policy. (McCampbell Expert Report; Doc. 56-7, Page 31).

270.     McCampbell's Expert Report found that Butler County's policy on use of force was vague. (McCampbell Expert Report; Doc. 56-7, Page 31).

271.     McCampbell's Expert Report found that Butler County's vague policies contribute to a work environment where uses of force are not timely or thoroughly evaluated. (McCampbell Expert Report; Doc. 56-7, Page 31).

272.     McCampbell's Expert Report found that Butler County Jail's vague policies on use of force telegraphs "the clear message to staff that they need not be concerned about their individual decisions to use force, even if inconsistent with agency policy, accepted practice, and case law." (McCampbell Expert Report; Doc. 56-7, Page 31).

273.     McCampbell's Expert report found that "the use of force reporting as documented on incident reports is generally vague, lacking in detail, and in some reports, misleading." (McCampbell Expert Report; Doc. 56-7, Page 38).

274.     McCampbell's Expert Report found that there were insufficient justification provided for the uses of force at Butler County Jail. (McCampbell Expert Report; Doc. 56-7, Page 38).

275.     McCampbell's Expert Report found that Butler County Jail's supervisors and leaders who signed off on reports did not question the absence of specifics. (McCampbell Expert Report; Doc. 56-7, Page 38).

276.     McCampbell's Expert Report found that the reason for these poor reports was due to the training received by employees. (McCampbell Expert Report; Doc. 56-7, Page 38).

277.     A Butler County Jail correctional officer has previously stated that his training instructed him to create written records that limit liability against Butler County. (McCampbell Expert Report; Doc. 56-7, Page 38).

278.     McCampbell's Expert Report found that information about uses of force will be written in such a way to minimize that potential liability and be very vague on details. (McCampbell Expert Report; Doc. 56-7, Page 38).

279.     McCampbell's Expert Report found that areas where an officer has been trained to recognize potential liability for Butler County will be written in such a way to minimize that potential liability and be very vague on details. (McCampbell Expert Report; Doc. 56-7, Page 38).

280.     Butler County Jail's policies fail to meet the Minimum Standards for Jails in Ohio. (McCampbell Expert Report; Doc. 56-7, Page 15-16).

281.     Many of Butler County Jail's many of these "Post Orders" repeat, verbatim, the language of the standards. (McCampbell Expert Report; Doc. 56-7, Page 15).

282.     McCampbell's Expert Report found that despite the language in the post orders, Butler County Jail fails to operationalize the requirements of everyday jail practice. (McCampbell Expert Report; Doc. 56-7, Page 15).

283.     McCampbell's Expert Report details eight Butler County Jail policies around major areas of operation that have this type of deficiency that are deficient. (McCampbell Expert Report; Doc. 56-7, Page 18).

284.     McCampbell's Expert Report examined 25 Butler County use-of-force jail records from 2018–19, and confirmed they evidenced frequent excessive use of force. (McCampbell Expert Report; Doc. 56-7, Page 38).

285.     Butler County Jail did not adopt the ICE Performance Based National Detention Standards that require that the use of force in detention facilities is never used as a punishment.  (ICE National Detention Standards, Doc. 56-5, Page 201).

286.     Butler County Jail did not adopt the ICE Performance Based National Detention Standards that require that the staff attempt to gain a detainee's willing cooperation before using force  (ICE National Detention Standards, Doc. 56-5, Page 201).

287.     Butler County Jail did not adopt the ICE Performance Based National Detention Standards that require that staff shall use only that amount of force necessary. (ICE National Detention Standards, Doc. 56-5, Page 201).

288.     Butler County Jail did not adopt the ICE Performance Based National Detention Standards that require ongoing training, to occur annually at a minimum and to include cultural diversity training. (ICE National Detention Standards, Doc. 56-5, Page 203).

289.     Butler County Jail did not adopt the ICE Performance Based National Detention Standards that require ongoing training, to occur annually at a minimum and to include cultural diversity training. (ICE National Detention Standards, Doc. 56-5, Page 203).

290.     Butler County Jail did not adopt the ICE Performance Based National Detention Standard stating that Striking a detainee when grasping or pushing him/her would achieve the desired result is prohibited. (ICE National Detention Standards, Doc. 56-5, Page 204).

291.     Butler County Jail did not adopt the ICE Performance Based National Detention Standard stating that striking a detainee when grasping or pushing him/her would achieve the desired result is generally prohibited. (ICE National Detention Standards, Doc. 56-5, Page 204).

292.     Butler County Jail did not adopt the ICE Performance Based National Detention Standard stating that using force against a detainee offering no resistance is generally prohibited. (ICE National Detention Standards, Doc. 56-5, Page 204).

293.     The National Detention Standards require a use-of-force team technique when a detainee must be forcibly moved during a calculated use of force. (ICE National Detention Standards, Doc. 56-5, Page 207).

294.     Butler County Jail did not adopt the ICE Performance Based National Detention

Standard requiring that "before using the calculated use of force, the on-site ranking

detention official, a designated health professional, and others as appropriate shall

assess the situation." (ICE National Detention Standards, Doc. 56-5, Page 207).

295.     The National Detention Standards require that all use-of-force incidents be

documented and forwarded to ICE/ERO for review, for calculated use of force. (ICE

National Detention Standards, Doc. 56-5, Page 207).

296.     The National Detention Standards require that the entire incident of force be visually

recorded through audiovisual recording equipment. (ICE National Detention

Standards, Doc. 56-5, Page 207).

297.     The National Detention Standards require that when injury occurs, the staff member

must immediately prepare an incident report. (ICE National Detention Standards,

Doc. 56-5, Page 207).

298.     The National Detention Standards also require that the detainee will be referred

immediately to a medical staff for an examination. (ICE National Detention

Standards, Doc. 56-5, Page 212).

299.     The National Detention Standards requires employees to submit a written report no

later than the end of his or her shift when force was used on any detainee for any

reason. (ICE National Detention Standards, Doc. 56-5, Page 201).

300.     Mr. Ranoldo Balfour observed excessive violence and racism that he and others

endured at the Butler County Jail, at the hands of the corrections officers. (Corrected

Declaration of Ranoldo Balfour, Doc. 80-1, PageID1939).

301.    Mr. Balfour noted that he reported guard misconduct, but nobody ever acted on his reports. (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1939).

302.    Mr. Balfour was housed in Butler County Jail from October 2019 to May 2020. (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1939).

303.    Mr. Balfour was housed in Butler County Jail during the same period as Plaintiffs. (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1939).

304.    Mr. Balfour has stated that six correction officers pulled him from the top of his bunk, after his bunkmate lied that that Mr. Balfour threatened the bunkmate with a pencil. (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1939).

305.    Mr. Balfour's face and nose was bleeding from the excessive force by the guards. (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1939-1940).

306.    Mr. Balfour observed the officers laughing about beating him. (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1940).

307.    Mr. Balfour observed that the officers at Butler County Jail, "frequently beat up black inmates, especially those who knew English well. (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1940).

308.    Mr. Balfour believed the COs knew that the detainees could not defend themselves, and they would regularly try to provoke inmates with threats or racist language. (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1940).

309.    Mr. Balfour observed the officers acting as "a gang against inmates." (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1940).

310.    Mr. Balfour observed that if an inmate made a complaint against a corrections officer, a group of COs would enter the inmate's cell and beat him, or provoke him to

retaliate so they could lock him up in isolation. (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1940).

311.    Mr. Balfour observed that the Butler County Jail officers often "beat inmates and then laughed about it afterwards." (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1940).

312.    Mr. Balfour would observe groups of correction officers "gang up against single inmate to beat [him]". (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1940).

313.    Mr. Balfour observed the officers "regularly used racist language toward [the inmates]". (Corrected Declaration of Ranoldo Balfour, Doc. 80-1, PageID1940).

314.    Another detainee, Mr. Renay Jones, observed extreme violence and inhumane, unsanitary conditions. (Corrected Declaration of Renay Jones, Doc. 81-1, PageID1944).

315.    Mr. Jones also filed a report and recalled that the violations took place in plain view of cameras, but the offenders faced no consequences. (Corrected Declaration of Renay Jones, Doc. 81-1, PageID1944).

316.    Mr. Jones had broken his arm just before his arrival at Butler County Jail. (Corrected Declaration of Renay Jones, Doc. 81-1, PageID1944).

317.    Mr. Jones, observing his spoon was dirty, requested a different one from the corrections officer. (Corrected Declaration of Renay Jones, Doc. 81-1, PageID1944).

318.    Mr. Jones was not resisting, but the correction officers grabbed him by his broken arm and threw him violently to the ground. (Corrected Declaration of Renay Jones, Doc. 81-1, PageID1944).

319.    Mr. Jones observed the other officer kneed him in the stomach. (Corrected Declaration of Renay Jones, Doc. 81-1, PageID1944).

320.    The force against Mr. Jones was used because he asked for a clean spoon because the one that he was given on arrival was very dirty.  (Corrected Declaration of Renay Jones, Doc. 81-1, PageID1944).

321.    Mr. Jones was then taken to solitary confinement, to a cell which was meant to house one person.  (Corrected Declaration of Renay Jones, Doc. 81-1, PageID1945).

322.    Three other people were inside the solitary confinement cell meant for one person. (Corrected Declaration of Renay Jones, Doc. 81-1, PageID1945).

323.     Mr. Jones observed the words "Kill all niggers" written in large letters on the wall of the solitary confinement cell. (Corrected Declaration of Renay Jones, Doc. 81-1, PageID1945).

324.    Mr. Jones observed feces everywhere.  (Corrected Declaration of Renay Jones, Doc. 81-1, PageID1945).

325.    Another inmate, Demba Diawara, observed many instances of physical abuse by the Correctional officers towards the inmates, especially immigrants. (Corrected Declaration of Demba Diawara; Doc. 77-1, PageID1880).

326.    Mr. Diawara has observed correction officers mistreat immigrants and use racist language towards them. (Corrected Declaration of Demba Diawara; Doc. 77-1, PageID1880).

327.    Mr. Diawara has observed correction officers handcuffing inmates to beat them up. (Corrected Declaration of Demba Diawara; Doc. 77-1, PageID1880).

328.    Mr. Diawara has observed correction officers beating inmates' backs and legs while he was handcuffed and could not defend himself. (Corrected Declaration of Demba Diawara; Doc. 77-1, PageID1880).

329.    Mr. Diawara has observed the correction officers leave the beaten inmate on the floor, bleeding and still handcuffed. (Corrected Declaration of Demba Diawara; Doc. 77-1, PageID1880).

330.    Mr. Diawara has observed Butler County correction officers withhold food and hot water from the inmates. (Corrected Declaration of Demba Diawara; Doc. 77-1, PageID1880).

331.    Mr. Mauricio Benty testified that two correctional officers grab him from behind and threw him into a wall, breaking his collarbone, then kicked him and called him a "nigger". (Benty Depo., Doc. 43, PageID1067-1069).

332.    Mr. Benty stated he did nothing to resist the correctional officers or provoke their attack, and that he did not hear any verbal orders before they assaulted him. (Benty Depo., Doc. 43, PageID1072-1079).

333.    Expert Susan McCampbell reviewed Butler County Jail records of February 2018 use of force against an Inmate McQueen, and analyzed it as likely being an instance of excessive use of force: "February 27, 2018 – Inmate wanted to file assault charges against Thurkill; allegations from a corrections officer that Thurkill followed inmate into inmate's cell and the officer heard ' . . . what sounded like a smack' before Thurkill exited the cell [BS001883]. Corrections officer said inmate told her immediately that Thurkill had hit him in the side of the head, and the officer observed a red mark on the inmate's face. Thurkill's report [001890-91] was that the inmate

threatened to get Thurkill fired, and 'I responded to the cell, placed inmate in the escort position and guided him to the wall and ordered him not to move. . . I informed him that he will not threaten officers . . . ' Thurkill's investigative testimony was that he placed the inmate in an 'escort position' and ' . . . guided him to the wall and ordered him not to move' [BS001884] after Thurkill said the inmate threatened him. When asked how hard he guided the inmate into the wall, Thurkill ' . . . stated he was not gentle about it.' But Thurkill denied he hit or struck the inmate. Thurkill justified placing the inmate in an 'escort position' for ' . . . threatening to get him fired.' [BS001885]. The former inmate's testimony to agency investigators was that Thurkill ' . . .slapped him on the left side of the face . . .' [BS001886]. An inmate in the cell at the time also heard a slap. [BS01887].... In any event, in my opinion, an inmate verbally threatening to have an officer fired... does not justify the use of any force, let alone the excessive force alleged in this instance. It is more of a bruised-ego situation than a real provocation. This is another indication of lack of training of employees to manage inmates appropriately and respectfully." **(**McCampbell Expert Report; Doc. 56-7, Page 48).

334.    Expert Susan McCampbell reviewed Butler County Jail records of March 2018 use of force against an Inmate Wirtz, and analyzed it as likely being an instance of excessive use of force:"March 8, 2018 – use of force, Thurkill ordered an angry inmate to give him back a book that another officer gave to the inmate, after Thurkill told the inmate he'd have to wait. Thurkill opened the cell door and used defensive tactics to retrieve the book. Inmate (Wirtz) claimed Thurkill assaulted him. [BS00608-609]. Supervisors (four of five signing off) found use of force within policy (signatures

illegible, no dates). In my opinion, this was no reason for this use of force to have taken place – just to retrieve a book that Thurkill told an inmate he couldn't have until later. No reason at all. This use of force was about the inmate getting something from another officer that Thurkill had refused. This was clearly an avoidable use of force, for no objective reason." (McCampbell Expert Report; Doc. 56-7, Page 48-49).

335.    Expert Susan McCampbell reviewed Butler County Jail records of April 2018 use of force against an Inmate Tucker, and analyzed it as likely being an instance of excessive use of force:"April 18, 2018 – After ordering an inmate not to move from a location, and the inmate slightly moved, Thurkill placed the inmate against the wall and ' . . . his head came into contact with the wall rather hard.' Thurkill informed a supervisor that '.. . Inmate Tucker had hit his head on the wall.' [BS00617-00618]. Four supervisors signed off on Thurkill's report as within policy, even with the glaring discrepancy of how the inmate's head came into contact with the wall. As noted elsewhere in my report, this is evidence of an absolute lack of management/leadership interest in examining uses of force, and, in this case, the matter didn't require a lengthy investigation to conclude there were violations of policy and lack of truthfulness by the reporting employee. Thurkill again places an inmate against a wall." (McCampbell Expert Report; Doc. 56-7, Page 49).

336.    Expert Susan McCampbell reviewed Butler County Jail records of May 2018 use of force against an Inmate Tallon, and analyzed it as likely being an instance of excessive use of force: "May 25, 2018 – An inmate refused to retrieve his identifying wrist band from his cell during dinner service. Thurkill 'ordered' the inmate several times to go to his cell and get his wrist band, and after the inmate refused, Thurkill

placed the inmate in an 'escort' position and took him to his cell. Once in the cell, according to Thurkill the inmate turned toward Thurkill and Thurkill struck the inmate on his nose and chin, bringing blood. At that time, Thurkill radioed for backup. Supervisors (four of five signing off) found use of force within policy (signatures illegible, no dates) [BS000635-000637]. There was no imminent harm before Thurkill escalated the situation. Thurkill, based on the totality of his own reporting, appears to have a trigger for force when inmates are disrespectful or don't follow his instructions, even regarding inconsequential matters, or when they ignore or confront him." (McCampbell Expert Report; Doc. 56-7, Page 50-51).

337.    Susan McCampbell, in her report on Butler County Jail, states that Butler County Jail violated the Ohio Minimum Jail Standards as well. This resulted in arbitrary operations, failure to thoroughly document incidents, including "major" violations of inmate rules, failure to conduct even a cursory investigation, and apparently haphazard implementation of sanctions. (McCampbell Expert Report; Doc. 56-7, Page 23).

338.    Susan McCampbell reviewed twenty-five Butler County Use of Force investigations from 2018-2019 and found an "absence of any oversight or questions from the Sheriff's Office jail commanders (or anyone else) regarding these incidents" and that "there is insufficient justification provided for uses of force, and supervisors and leaders who sign off on the reports apparently did not question the absence of specifics." (McCampbell Expert Report; Doc. 56-7, Page 38).

339.    In her report, expert Susan McCampbell remarks that Defendants' "Post Order SMO-01, 'Use of Force,' while citing verbatim the Ohio Jail Minimum Standards,

fails to incorporate the language in Corrections Division Post Order ICE-14, which provides that '[i]n instances where the threat is not immediate and/or the detainee is in an isolated location, the officer shall make every effort to resolve the situation without use of force.' (McCampbell Expert Report; Doc. 56-7, Page 26-27).

340.     Corrections Division Post Orders SMO-01, Use of Force while citing verbatim the Ohio Jail Minimum Standards, fails to incorporate the language in Corrections Division Post Orders ICE-14, which provides "*In instances where the threat is not immediate and/or the detainee is in an isolated location, the officer shall make every effort to resolve the situation without use of force.*" (Post Order on ICE Detainees, Doc 56-8, PageID1425; Post Order on Security, Doc 56-9, PageID1427).

341.     Lynn Tramonte described the pattern of excessive force at Butler County Jail and the violence and torture of immigrants, particularly the violence against Cameroonian, Somali, and other Black and Muslim detainees. (Declaration of Lynn Tramonte, Doc. 53-2, PageID1174).

Respectfully submitted,

/s/ Amy E. Norris
Amy E. Norris (admitted pro hac vice, DC 1017140)
NORRIS LAW GROUP
616 E Street N.W.
Suite 1156
Washington, DC 20004
(202) 830-1225
amy@mwlc.org

John C. Camillus (0077435)
Law Offices of John C. Camillus, LLC
P.O. Box 141410
Columbus, Ohio  43214
(614) 992-1000
(614) 559-6731 (Facsimile)

jcamillus@camilluslaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the aforegoing was served, via PACER e-filing,

upon Defendants' counsel this 27th day of September 2024.


Daniel T. Downey (0063753)

**FISHEL DOWNEY ALBRECHT & RIEPENHOFF LLP**

*Attorney for Defendants, County of Butler, Ohio, the Butler County Board of Commissioners, Butler County Jail, and Corrections Officers A. Roberts, L. Browning, and "Blankton"*


/s/ Amy E. Norris
Amy E. Norris (DC Bar 1017140)

**NORRIS LAW GROUP, PLLC**

616 E Street NW, 1156 Washington, DC 20004 (202) 830-1225 amy@norrislawgroup.org

*Counsel for Plaintiffs*